ANDERSON *v.* RAILROAD.

(*Nashville.* December 17, 1891.)

1. CORPORATIONS. *Registration of charter. Collateral attack.*

The existence of a railroad company, chartered and organized under the general incorporation Act of 1875, cannot be "collaterally questioned" in any legal proceeding—*e. g.*, in suit to recover subscriptions of stock—after its completed charter has been duly registered in the county where the "principal office" of the corporation is situated, although its charter has not been, as required by the Act, registered in other counties traversed by the proposed line of road.

Acts construed: Acts 1875, Ch. 142.

Case cited and approved: Brewer *v.* State, 7 Lea, 682.

2. SAME. *Same. Location of principal office.*

The "principal office" of a corporation is located in that county where the corporators elect to have their charter first registered and perfected, within the meaning of the requirement of the Act of 1875, that the charter "is to be registered in the county where the principal office of the company is situated."

Acts construed: Acts 1875, Ch. 142.

3. SAME. *Same. Amended charter.*

An amended charter is void, in like manner as an original charter, if it has not been registered as required by Act of 1875 in the office of the Secretary of State.

Acts construed: Acts 1875, Ch. 142; Acts 1883, Ch. 163.

Case cited and approved: Brewer *v.* State, 7 Lea, 682.

4. SAME. *Stockholders' liability for their subscriptions. Conditional contract.*

There is ordinarily an implied condition in every contract of subscription to the initiatory stock of a corporation that the subscriber shall not be required to pay his subscription unless the entire capital stock, as fixed, is taken.

Case cited and approved: Read *v.* Memphis Gas Co., 9 Heis., 545.

5. SAME.   *Same.   Waiver of condition.*

But this implied condition may be waived, or expressly provided against. It is waived, although it had originally attached, where the subscribers to the stock of a railroad company consented to pay their subscriptions before the entire capital stock was taken, in order that a portion of the proposed line of road might be put in course of construction, and this was accordingly done upon the faith of their unconditional promise to pay.

6. SAME.   *Same.   Estoppel.*

And subscribers, thus waiving this implied condition and consenting to pay their subscriptions unconditionally, are estopped, after the work has been contracted and performed upon the faith of their promise, to contest their liability upon the ground that the enterprise as a whole has failed for want of adequate funds to carry it out, and that their expectations had thus been wholly disappointed.

7. CHANCERY PRACTICE.   *Bill of exceptions necessary, when.*

Evidence excluded by the Chancellor upon the hearing of a cause, ceases to be part of the record until restored by proper bill of exceptions.

Cases cited and approved: Steele *v*. Frierson, 85 Tenn., 430; Aymett *v*. Butler, 8 Lea, 453.

---

FROM SUMNER.

---

Appeal from Chancery Court of Sumner County. W. C. DISMUKES, Sp. Ch.

J. J. TURNER for Anderson.

GEORGE W. BODDIE and C. R. HEAD for Railroad.

Anderson *v.* Railroad.

LURTON, J.   A number of subscribers to the original stock of the defendant company have joined in filing this bill for the purpose of enjoining suits at law upon their several contracts of subscription.

The corporation, expressly waiving all questions of jurisdiction, answers and submits the liability of complainants to the judgment of the Court, and by cross-bill seeks a recovery against each of them.

The learned Chancellor was of opinion that no liability existed, and perpetually enjoined suits at law and dismissed the cross-bill. In support of this decree a number of propositions have been urged.

*First.*—It is insisted that the defendant company has no legal existence, because its charter has not been registered in the several counties through which it is authorized to construct and operate a line of railway.

The charter of the defendant company was obtained under the general incorporation Act of 1875. It was granted in 1883, and, as recited in the written parts, was "for the purpose of constructing a railway from the town of Gallatin, in the county of Sumner, to the city of Knoxville, in the county of Knox, through the counties of Sumner, Trousdale, Smith, Putnam, DeKalb, White, Cumberland, Roane, and Knox, over the most direct and practical route between the said termini." This charter, after registration in Sumner, was transmitted to the Secretary of State, who affixed his certificate of registration in his office and the

great seal of State. This certificate, together with the great seal, was subsequently registered in the county of original registration. Whether there has been any registration in any of the other counties in the projected line of road is on the record left in doubt. Complainants insist that until registration in these other counties, and particularly in the county of Trousdale, where work has been begun and where directors' meetings have been latterly held, that the company has no valid corporate existence.

By Section 26 of the Act of 1875 it is required that the charter shall be registered in the office of the county where the principal office of the company is situated; that it shall then be transmitted to the Secretary of State, who shall affix his certificate of registration, together with the great seal of State, and that these shall be likewise registered "where said instrument was originally registered." This section then declares that this registration shall complete the formation of the company as a body-politic, and the validity of the same in any legal proceeding shall not be collaterally questioned.

When these conditions of existence have been fulfilled as required, and not before, can the corporation rely upon its exemption from collateral attack. *Brewer* v. *State*, 7 Lea, 682.

All of this was done in this case. We must take the registration in the first instance as a corporate determination of the location of its

"principal office." Registration in the county where its principal office is situated completes its identity as a corporation. It is true that by a subsequent clause in the same section it is provided "that if the corporation establishes agencies in any other county or counties, the instrument must be also registered in said county." Failure to comply with this provision may subject the corporation to a proceeding by the State for a forfeiture, but its corporate existence cannot be collaterally questioned after registration in the county of its principal office. Complainants are not in a situation to make any question as to the failure to register in Trousdale County. It is shown that after they had subscribed, that the meetings of the directors and stockholders were held at Hartsville. This cannot change the fact that the corporators determined Sumner County to be the location of the principal office. The subsequent opening of an office in that county, or the removal of the principal office, if permissible, cannot affect the charter acquired by the registration in Sumner.

*Second.*—The capital stock was fixed by the corporators, at a meeting held for purposes of organization, at three millions of dollars. Something less than $50,000 of this had been taken when this bill was filed. Complainants' contention is, that until the whole of the stock is taken they cannot be made liable for calls on their subscription.

It is well settled that there is an implied condition that the amount of stock specified in the

charter, articles of association, or contract of subscription, or fixed by the corporators when authorized to settle same, shall be actually taken before the subscribers shall become liable. *Read* v. *Memphis Gas Co.*, 9 Heis., 545; Morawetz on Private Corporations, Sec. 156; Beach on Private Corporations, Sec. 535.

This implication may, however, be rebutted by the terms of the charter, or the provisions of the enabling Act, articles of association, action of stockholders or corporators fixing capital, or by the conditions of the contract of subscription. So a subscriber may waive such condition, and this waiver may be either express or implied. A waiver will generally be implied if the subscriber consents to the letting of contracts, the creation of debt, or the doing of any corporate act involving the necessity of calling in the subscribed stock, unless the charter expressly forbid the doing of any corporate act until the requisite capital is taken. Morawetz on Private Corporations, Sec. 156; Beach on Private Corporations, Sec. 535, and authorities cited.

There is nothing in the charter, or resolution fixing amount of capital stock, or in the original contract of subscription, rebutting the usual implied condition and taking their contract of subscription out of the general rule of law. But after the original subscription had been made, a majority of the subscribers entered into the following agreement:

"For the purpose of enabling the Middle and

East Tennessee Central Railroad Company to put their road under construction from the Chesapeake and Nashville Railroad to Hartsville, Tenn., the undersigned subscribers to the capital stock of the said Middle and East Tennessee Central Railroad Company agree that they will pay their said subscriptions as fast as the work progresses; provided, that not more than twenty-five per cent. shall be called for in any one month."

Upon the faith of this agreement the directors let out a contract for the construction of the very part of the projected line contemplated by this agreement, being eleven and one-half miles, and covering the route between the Chesapeake and Nashville road and the town of Hartsville. The contractors were shown this supplementary agreement, and upon the faith of it accepted a contract to construct so much of the road as was agreed to by that paper, and had completed about seventy per cent. of the work when this suit was begun. The obvious effect of assenting to this agreement was to waive the implied condition that the whole of the stock should be raised, and was an undoubted agreement that the work should begin at the Chesapeake and Nashville Railroad instead of the town of Gallatin. Some of complainants did not sign this agreement, and are not shown to have assented, by votes or otherwise, to the commencement of work or the creation of debt. There is proof that at a meeting of subscribers it was unanimously resolved that the directors should let

out a contract for that part of the line between Gallatin and Carthage; but it is not shown that the complainants, who failed or refused to sign the agreement above set out, in any way participated in this meeting, or that their stock was represented. We therefore decide that such of complainants as did not sign the agreement assenting to the beginning of work between the Chesapeake and Nashville Railroad and the village of Hartsville are not now liable to have their stock called. The remainder of complainants have expressly agreed to the beginning of construction, and to the payment of their stock as work progressed, and as to them this implied condition has been waived.

*Third.*—Certain other positions remain to be considered as to those of complainants who have waived the condition that the full capital stock should be raised.

It is said the defendant company is now insolvent, and that the original scheme for a route from Gallatin to Knoxville cannot be carried out, and that the enterprise has been dwarfed to a short link, beginning eight and one-half miles from Gallatin and terminating at Hartsville. It is urged that the charter provided for a road beginning at Gallatin, and not at a point on the Chesapeake and Nashville road eight and one-half miles from Gallatin, and that it should terminate at Knoxville, and not at the town of Hartsville; that complainants are business men and property owners in

Gallatin, and that the scheme into which they entered contemplated a great through road passing through the coal-fields of the Cumberland Mountains, and connecting their city with other lines of railway, and with the flourishing city of Knoxville. They further insist that, to procure their subscription, the officers and agents of the company represented that no call would be made upon their subscriptions until the company had secured a contract whereby if it should build to Carthage it could consolidate with a road thence to Knoxville to be built by a Mr. Crawford, and that no call should be made until the Chesapeake and Nashville road was constructed into Nashville, and a running arrangement made by which the trains of the defendant company should be carried into Nashville over the tracks of the Chesapeake and Nashville; that none of these things have been done, or are now possible; and that, therefore, they should not be held liable. The company, for answer to the objection as to the beginning point of the road under construction, interpose an alleged amendment to the charter fixing the beginning point at the Chesapeake and Nashville Railroad near Gallatin. This amendment was obtained in 1884, upon application of the directors as provided by the Act of 1875 as amended by the Act of 1883, Chapter 163. It was duly registered in Sumner County, but appears never to have been registered with the Secretary of State. This neglect makes the amendment, even if otherwise valid,

ineffectual and void. An amendment must be registered as the original, and, until this is done, is subject to the same objection which renders void a defectively registered charter. *Brewer* v. *State*, 7 Lea, 682.

Another amendment was obtained pending this suit, changing the termini to the Chesapeake and Nashville Railroad near Gallatin and the town of Carthage, in Smith County. This amendment seems to have been in all respects properly registered. By it the capital stock was reduced to $350,000. This reduction does not help the case, inasmuch as it is not shown that even this has been taken, to say nothing of other objections not necessary to consider. Without passing upon the validity of this second amendment, we are of opinion that, whether valid or invalid, the complainants are estopped to question their liability as subscribers. They expressly agreed that, to enable the company to put under construction the line between the Chesapeake and Nashville Railroad and town of Hartsville, they would pay their subscriptions as that work progressed, in calls of twenty-five per cent. monthly.

It is too late now to say that the line has not been begun at Gallatin, or that it cannot be carried beyond Hartsville. We know of no reason why this company might not have begun the work of construction at any point on the line between Gallatin and Knoxville. If its finances should prove insufficient to connect the part so constructed

with the charter termini, this ought not in law or equity relieve the subscribers who assented to the beginning of so great an enterprise upon so insufficient a capital.

The representations made to induce subscriptions were all made antecedent to the written contract of subscription, and upon this ground, as tending to contradict the written contract, were excluded. This ruling was doubtless correct; but, however this may be, the excluded evidence is not properly a part of the record before us.

When evidence offered in a chancery cause is excluded upon objection, the correctness of the ruling cannot be challenged upon appeal unless the excluded evidence be made a part of the record by bill of exceptions. This has been repeatedly so ruled. *Steele* v. *Frierson*, 85 Tenn., 430; *Aymett* v. *Butler*, 8 Lea, 453.

There is a paper in the transcript styled a bill of exceptions. But this is not signed by the Chancellor as a bill of exceptions. Whether it be a memorandum on a deposition or a decree interlocutory does not appear. But, however this may be, it does not purport to make the excluded evidence a part of the record, and simply recites that certain questions and answers referred to by numbers were objected to and excluded. At most, this can only operate to exclude and not include this evidence.

The decree of the Chancellor must be reversed as to all of the complainants except Anderson,

Miller, and Thompson. As to them it will be modified so as to enjoin suits at law until the capital stock settled by the corporators has been raised. The original bill will be dismissed as to all of the other complainants. The railway company, under its cross-bill, will take a decree, in accordance with the prayer of that pleading, against each defendant thereto save Anderson, Miller, and Thompson, for the amount of their several subscriptions alleged to be due and unpaid, with interest from filing of cross-bill. One-third of the costs will be paid by defendant railway company, and remainder by defendants to cross-bill against whom decrees are rendered.