JOHN W. HUNTER *v.* R. A. SWADLEY *et al.*

(*Knoxville.* September Term, 1918.)

1. **RELIGIOUS SOCIETIES.** Unincorporated religious association. Actions against.

An unincorporated religious association should plead, and be im-pleaded through its trustees, although it is doubtless true that, where the interests of the trustees are adverse to the association, the association may be impleaded by naming its members. (*Post.* p. 160.)

Cases cited and approved: Wilson v. M. E. Zion Church, 138 Tenn., 398. Headrick v. Ruble, 78 Tenn., 15.

2. **JUDGMENT.** Parties. Conclusiveness. Waiver of defects.

Where a bill against an unincorporated religious association named as defendants trustees who had gone out of office shortly before, but the association defended the suit employing counsel, *held*, that the judgment was binding against the association; the case being one of misnomer which was waived unless raised by plea in abatement. · (*Post, pp.* 160-163.)

3. **APPEAL AND ERROR.** Review. Law of case.

A former judgment against an unincorporated religious association *held* on subsequent appeal conclusive as to the authority of the association to incur the indebtedness sued for. (*Post, p.* 163.)

4. **RELIGIOUS SOCIETIES.** Unincorporated societies. Property. Indebtedness.

Where an unincorporated religious association sold its property and delivered the proceeds to another religious society which invested the same in new property, *held*, that one having a claim against the association, while not entitled to enforce it against the prop-erty, might reach the proceeds of the property in the hands of the new society. (*Post, pp.* 163, 164.)

Cases cited and approved: Solinsky v. Lincoln Savings Bank, 85 Tenn., 368; Williamson v. Williams, 79 Tenn., 355.

Hunter v. Swadley.

5. **RELIGIOUS SOCIETIES.** Incorporation. Essentials.

Under General Incorporation Act of 1875 Thompson's Shannon's Code, section 2026), declaring that, after the certificate of the Secretary of State and the *fac simile* of the great seal shall be registered in the register's office of the county wherein the principal office of the company is situated, the formation of the company as a body politic shall be complete, a religious society which attempted to incorporate is not a corporation until the certificate is recorded in the office of the register, and, until such recordation, is not a *de facto* corporation and may be treated as an unincorporated association by one who did not recognize its corporate character. (*Post, pp.* 164-167.)

Acts cited and construed:  Acts 1875;  Acts 1877, ch. 23.

Cases cited and approved:  Brewer v. State, 75 Tenn., 682;  Shields v. Clifton Hill Land Co., 94 Tenn., 123;  Railroad v. Sneed, 99 Tenn., 1;  Carpenter v. Frazier, 102 Tenn., 462;  Merriman v. Magiveny, 59 Tenn., 494.  Railroad Co. v. Johnson, 67 Tenn., 332;  State v. Butler, 83 Tenn., 104;  Manufacturing Co. v. Vertress, 72 Tenn., 75;  Tennessee Automatic Lighting Co. v. Massey (Ch. App.), 56 S. W., 35;  Ingle System Co. v. Norris & Hall, 132 Tenn., 472.

Cases cited and distinguished:  Anderson v. Railroad, 91 Tenn., 44;  Collier v. Railroad, 113 Tenn., 96.

6. **MORTGAGES.** Priority. Right to.

Where plaintiff was entitled to subject to the payment of his debt, incurred by the original church, funds which a second church received from the first, held that, where the second church did not complete its corporate organization until after complainant filed his bill, complainant was entitled to satisfaction out of its property prior to mortgages executed by the second church as a corporation, though such mortgages were valid against the church; he having fixed a prior lien by attachment. (*Post, pp.* 167, 168.)

FROM KNOX.

Appeal from the Chancery Court of Knox County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—Hon. HAL. H. HAYNES, Chancellor.

E. C. REEVES and COX & TAYLOR, for appellant.

LEE F. MILLER and DIVINE & GUINN, for appellees.

MR. JUSTICE GREEN delivered the opinion of the Court.

This suit is brought to collect from the Central Baptist Church, of Johnson City, hereafter called the "new church," a judgment alleged to have been obtained by C. N. Brown & Co., for the use of complainant Hunter, against the Missionary Baptist Church, or First Baptist Church, an unincorporated religious association, formerly existing at Johnson City, hereafter called the "old church."

The chancellor was of opinion that complainant was not entitled to satisfy said judgment out of the assets of the new church. The court of civil appeals was of contrary opinion, reversed the decree of the chancellor, and directed the subjection of the property of the new church to said judgment. Complainant attached the property of the latter organization.

The complainant appears to have once been affiliated with the old church, and this controversy has engendered much feeling. The case has been prepared and presented elaborately, with learning and ability quite disproportionate to the amount involved.

Numerous questions are raised, and the case will be more readily understood by stating a portion of the facts in connection with the disposition of each point.

Two general questions are to be determined: First, whether complainant obtained a valid judgment against the old Baptist church; and, second, whether the property of the new Baptist church can be taken for the payment of this judgment.

The original bill of C. N. Brown & Co., for the use of this complainant, was filed against R. R. Bayless, George P. Crouch, and T. G. Galloway, as trustees of the old church, and against J. W. Houtz and George P. Crouch, as a sales committee of that church. It averred liability on the part of the church to complainants therein for services as real estate agents in an effort to sell certain property belonging to the church. An answer was filed to this bill, many defenses interposed, and proof taken. The bill was dismissed by the chancellor, but his decree was reversed by the court of civil appeals, and the decree of the court of civil appeals was affirmed by this court, and on September 26, 1912, a decree was rendered in this court in favor of the complainants against R. R. Bayless, George P. Crouch, and T. G. Galloway, as trustees, and J. W. Houtz and George P. Crouch, as a sales committee of said church, for the sum of $587.80 and costs.

It is first contended by the defendants herein that this was not a valid judgment against the old church. It is said that two of the parties named as trustees of said church were not trustees thereof when the suit was brought, and it is furthermore argued that it is necessary to make the members of a voluntary association defendants in order to secure a judgment binding against the property of such an association.

We have recently had occasion to consider the character of an unincorporated religious association. We have held that such an association, under the statutes, is a legal entity for certain purposes and within a limited sphere enjoys *quasi*-corporate existence. We have said such an association might sue and be sued in respect to the few contracts it was authorized to make, and that "such an association should plead and be impleaded through its trustees." *Wilson* v. *M. E. Zion Church,* 138 Tenn., 398, 198 S. W., 244.

It is doubtless true, where the interests of the trustees are adverse to those of the association, or perhaps under other circumstances, the association may be impleaded by naming its members as defendants. *Headrick* v. *Ruble,* 78 Tenn. (10 Lea), 15. But it can be reached through its trustees.

We do not think that jurisdiction of the old church was acquired by naming as parties defendant Houtz and Crouch as a sales committee.

Prior to the filing of the original suit, Bayless, Crouch, and Galloway were the trustees of the old church. It appears, however, from the minutes of that organization, that Crouch and Bayless resigned October

6, 1909.   The original bill was filed November 4, 1909. So, at the time the first suit was brought, Crouch and Bayless were not actually trustees.

Although the church was not, therefore, properly impleaded in such a way as to bind its property, had a suitable defense been interposed, we think that the subsequent procedure of the church precluded any objections to the judgment against it on this account.

Beyond all question, the church treated this suit as one against it and as an effort to hold its property. While the authority of the trustees and the sales committee to bind the church for this agent's commission was denied, nevertheless the church answered the original bill through these very defendants, named as its representatives.

On December 1st, at a congregational meeting, the following resolution was passed:

"Moved and carried that the following recommendations from the board of deacons be adopted, viz.:

" 'That, whereas, C. N. Brown & Co., by J. W. Hunter, has filed a bill in court in an endeavor to extort the sum of $500 from the church, on the claim of commission:

" 'We, therefore, recommend that the officers of the church be empowered to employ counsel to defend said cause.' "

In pursuance of this resolution, counsel were employed, and the suit was vigorously defended, and proof herein shows that this defense was made by the church.   As a matter of fact, the trustees of the old

church, at the time the original suit was brought, were Galloway, Vines, and Peoples. The complainants named Galloway, Crouch, and Bayless.

The case then is merely one of misnomer—a suing of a defendant by a wrong name. Such a matter is one of abatement, only, and, if the defendant misnamed makes actual appearance and defends on the merits he cannot later take advantage of the misnomer, and the judgment, though rendered according to the style of the suit, is binding against the real defendant.

"Suing a defendant by a wrong name is a matter of abatement only and will not avoid a judgment against him if he has been actually served. An actual appearance is the equivalent of personal service within the meaning of this rule. Hence, where a party is sued by a wrong name and he appears to the suit and does not plead the misnomer in abatement, and judgment is rendered against him in the erroneous name, execution may be issued upon it in that name and levied upon the property and effects of the real defendant. Even a corporation cannot take advantage of its being incorrectly named as a party defendant in an action otherwise than by plea in abatement. Failing to make such a plea, a judgment against it cannot be avoided because of a misnomer." 15 R. C. L., p. 599; Clark & Marshall on Corporations, vol. 1, p. 154; Black on Judgments, section 213.

It follows, for the reasons stated, that the original judgment against the parties named as trustees of the First Baptist Church, or Missionary Baptist Church, bound the property of that organization, inasmuch as it

entered appearance, waived the misnomer, and defended on the merits.

All questions as to the authority of this organization to incur such an indebtedness, and its liability for said indebtedness, are foreclosed by the decree in the former case, inasmuch as the old church was before the court, and these questions there adjudicated. We will not go into such matters again.

During the pendency of this suit against the old church, the Central Baptist Church, or the new church, was organized, but not at first incorporated. It was composed, principally, of members of the old church and of the members of another church, known as the Roan Street Baptist Church. The old church voluntarily turned over all of its property to the trustees of the new one, and the latter sold this property to innocent purchaser for value, for about $13,000. This sum was invested by the new church in other property.

The complainant is not entitled to follow the identical property, or real estate, of the old church in the hands of these innocent purchasers. Complainant is, however, entitled to reach the proceeds of this property in the hands of the new church, the donee of said voluntary conveyance. *Solinsky* v. *Lincoln Savings Bank,* 85 Tenn., 368, 4 S. W., 836; *Wilkinson* v. *Williams,* 79 Tenn. (11 Lea), 355.

In the fall of 1912, the new church endeavored to incorporate under the name of the ''Central Baptist Church, of Johnson City.'' Application was made for a charter, other steps taken, and the trustees of the new

church undertook to transfer all its property to the corporation.

All this was done some two years before the present bill was filed. The corporation was not named as a party to this suit, and it is urged that the suit must fail, inasmuch as complainant has not named as defendant the party owning and in possession of the property sought herein to be reached.

The complainant replies that there was no valid organization of the corporation and that it did not become a legal entity with which he had to reckon. Complainant therefore ignored the corporation, except to refer to it, and named as defendants to this bill the trustees of the new church prior to the attempted incorporation and sought to reach the property as in their hands.

Application for the charter of the Central Baptist Church was made September 3, 1912, and this application acknowledged and probated, in Washington county, on the same day. The certificate of the Secretary of State and the great seal were attached September 20, 1912. The certificate and *fac simile* of the seal, however, were not registered in the office of the register of Washington county until December 11, 1914, several days after the bill herein was filed. It is said for the complainant that, until the certificate and seal were duly registered, he was not bound to recognize the organization as a legal corporate entity. We think this contention must be upheld.

In the General Incorporation Act of 1875 appears this provision, carried into Thompson's Shannon's Code at section 2026:

"The said instrument, when probated as hereinafter provided [section 2542], with application, probates, and certificates, is to be registered in the county where the principal office of the company is situated, and also registered in the office of the Secretary of State; and a certificate of registration given by the Secretary of State, under the great seal of the State, shall when registered in the register's office of said county, with the *fac simile* of said seal, complete the formation of the company as a body politic; and the validity of the same in any legal proceedings shall not be collaterally questioned."

This section of the Code was first construed in *Brewer* v. *State,* 75 Tenn. (7 Lea), 682. In that case the defendant was indicted for violation of the Four Mile Law (Laws 1877, chapter 23), and proved that the certificate and *fac simile* of the seal of State attached to the charter of the incorporated institution, near which his offense was said to have been committed, had not been registered in the county at the time of the alleged offense. The court held that, under such facts, the institution "was not then an incorporated institution in the sense of the statute," and the defendant was therefore not guilty of the offense charged.

This case has been cited and approved in *Anderson* v. *Railroad,* 91 Tenn., 44, 17 S. W., 803; *Shields* v. *Clifton, Hill Land Co.,* 94 Tenn., 123, 28 S. W., 668, 26 L. R. A., 509, 45 Am. St. Rep., 700; *Railroad* v. *Sneed,* 99 Tenn., 1, 41 S. W., 364, 47 S. W., 89; *Carpenter* v. *Frazier,* 102 Tenn., 462, 52 S. W., 858; *Collier* v. *Railroad,* 113 Tenn., 96, 83 S. W., 155; and other cases.

In *Anderson* v. *Railroad,* supra, it was said, speaking of the provisions as to registration of the charter and of the certificate and seal: "When these conditions of existence have been fulfilled as required, and not before, can the corporation rely upon its exemption from collateral attack."

In *Collier* v. *Railroad,* supra, it is said:

"The things which the statute requires to be done in order to complete the organization of the corporation as a body politic are mandatory and essential, and, unless they are all substantially done, the charter is void and the incorporation is incomplete."

The very language of the statute which declares that, "after" these various requirements are complied with, the corporation is complete, "and the validity of the same shall not be in any legal proceeding collaterally questioned," necessitates the implication that the validity of the organization is open to collateral attack prior to the observance of such conditions.

It is insisted that the Central Baptist Church was a *de facto* corporation, at least, and as such its existence could not be collaterally questioned, nor its validity challenged, by any one except the State. Many authorities are cited for this proposition. Some Tennessee cases are mentioned by counsel; but, when understood they are not in point. We do not think *Brewer* v. *State,* supra, has ever been modified by this court, and under the act of 1875 an organization does not become a *de facto* corporation until there has been a compliance with the formalities just mentioned—not, at least, as against one who has not dealt with it as a corporation.

*Merriman* v. *Magiveny,* 59 Tenn. (12 Heisk.), 494, *Railroad Co.* v. *Johnson,* 8 Baxt. (67 Tenn.), 332, *State* v. *Butler,* 83 Tenn. (15 Lea), 104, and *Manfacturing Co.* v. *Vertrees,* 72 Tenn. (4 Lea), 75, did not consider corporations chartered under the act of 1875, containing the provisions above quoted.

*Tennessee Automatic Lighting Co.* v. *Massey* (Ch. App.), 56 S. W., 35, was a case where those undertaking to collaterally question the legal organization of the corporation had themselves in business dealings recognized it as a corporation.

The principle upon which *Tennessee Automatic Lightning Co.* v. *Massey,* property, rests, and which is sound, is stated by this court in a later case to be that a private person who enters into a contract with a purported corporation thereby admits the existence of the corporation and is estopped later to deny such corporate existence. *Ingle System Co.* v. *Norris & Hall,* 132 Tenn., 472, 178 S. W., 1113.

Most of the older Tennessee cases relied on by defendants really rest on this principle.

The Central Baptist Church made three mortgages of its property, assuming to act as a corporation, prior to the registration of the certificate of the Secretary of State and the seal. The corporate organization was perfected after this bill was filed, and for this and other reasons the mortgages are valid as against the church.

We think, however, the debt of the complainant must have satisfation out of the church property prior to these mortgages. This complainant never in any way

recognized the corporate existence of the Central Baptist Church. As to him it had no corporate existence at the time of his suit and was unable to acquire the legal title to this property. Therefore, as to this complainant, the legal title did not pass by the deed of the trustees to the corporation, nor pass by the corporate deed to the trustees of these mortgages. As to complainant the legal title stood in the name of the trustees of the Central Baptist Church. To the extent that the property of the old church had gone into this organization, namely, about $13,000, the property of the Central Baptist Church was liable to the satisfaction of complainant's judgment. We think he fixed a prior lien thereon by his attachment herein.

It results that there is no error in the decree of the court of civil appeals, and the same will be affirmed, with costs. And, unless said judgment is paid within sixty days, the clerk of the court will sell said property, in the manner provided by law, for the satisfaction thereof.