R. N. REED v. S. C. APPLEBY et al.*

(*Nashville.* December Term, 1923.)

1. **LICENSES.** Compliance with Blue Sky Law by foreign corporation dealing in mortgage loans not required.

Compliance with the Blue Sky Law by a foreign corporation was not required where corporation was not engaged in sale of securities and limited its activities exclusively to real estate loans for which it was organized, such business being excluded by Acts First Ex. Sess. 1913, chapter 31, section 1, from "Investment Companies." (*Post, p.* 68.)

Acts cited and construed: Acts 1913, ch. 31, sec. 1

Cases cited and approved: Goodyear v. Meux, 143 Tenn., 287; Warehouse v. Sentelle, 255 S. W., 589; Biddle v. Smith, 256 S. W., 454.

2. **CORPORATIONS.** Addition of unauthorized inconsistent purposes to articles of incorporation held not to vitiate corporation's charter.

Where articles of incorporation declared the purpose of an Oklahoma corporation to engage in real estate mortgage loan business, amended articles adding unauthorized inconsistent purpose did not vitiate corporate charter, but would be treated as surplusage, since Oklahoma statutes limit corporate powers to specific purposes, and such statutes and articles of incorporation form the corporation charter. (*Post, pp.* 68-70.)

---

*For authorities discussing the question of constitutionality of Blue Sky Laws, see note in L. R. A., 1917F, 524.

On the question of validity of Blue Sky Laws, see notes in 15 A. L. R., 262; 24 A. L. R., 523.

On mode of proving right of foreign corporation to do business in the state, see note in 2 A. L. R., 1235.

On distinction between licensing to do domesticating business and domesticating foreign corporation, see note in 18 A. L. R., 131.

Reed v. Appleby.

3. **CORPORATIONS.** Validity of corporate existence cannot be collaterally attacked.

Neither in Oklahoma nor Tennessee, in view of Act of 1875, and Comp. St. Okl. 1921, section 5293, can the validity of a corporate organization be collaterally attacked by those dealing with it as such. (*Post, pp.* 68-70.)

Cases cited and approved: Anderson v. Railroad, 91 Tenn., 44; Miller v. Insurance Co., 92 Tenn., 183; Merriman v. Magiveny, 59 Tenn., 494; Williams v. Railroad Co., 68 Tenn., 488; Tenn. Automatic Lighting Co. v. Massey, 56 S. W., 35; Shoun v. Armstrong, 59 S. W., 790; Heck v. McEwen, 80 Tenn., 97.

Case cited and distinguished: Anderson-Dulin-Varnell Co. v. Williams, 255 S. W., 597.

4. **CORPORATIONS.** Statute held sufficiently complied with by Oklahoma corporation filing copy of incorporation articles certified to by Oklahoma secretary of State.

Acts 1891, chapter 122, as amended by Acts 1895, chapter 81, declaring the procedure by which a foreign corporation may become domesticated, was sufficiently complied with by an Oklahoma corporation where it procured from the Oklahoma secretary of State a copy of its articles of incorporation, which were certified to by him and filed by corporation with Tennessee secretary of State, and the corporation paid tax required by Acts 1907, chapter 534; certification of articles by secretary of the corporation not being requisite in such case. (*Post, pp.* 70-73.)

Acts cited and construed: Acts 1891, ch. 122; Acts 1895, ch. 81; Acts 1907, ch. 434.

Cases cited and approved: Gilmer v. Saving & Loan Co., 103 Tenn., 272; Cary-Lumbard Lbr. Co. v. Thomas, 92 Tenn., 587; Interstate Amusement Co. v. Albert et al., 128 Tenn., 417; Cunnyngham v. Shelby, 136 Tenn., 176; Loan Co. v. Miller, 47 S. W. 17.

Code cited and construed: Sec. 2546 (S.).

---

*Headnotes 1. 8 C. J., Blue Sky Law, p. 1130; 2. 14 C. J., Corporations, section 204; 3. 14 C. J., Corporations, section 216; 4. 14A C. J., Corporations, section 3959.

FROM GILES.

Appeal from the Chancery Court of Giles County.—Hon. Thos. B. Lytle, Chancellor.

W. B. Smithson and Lee & Abernathy, for appellants.

Eslick & Eslick and Jones & Wagstaff, for appellee.

Mr. Justice Cook delivered the opinion of the Court.

The original bill was filed to enforce payment of purchase-money notes executed by S. C. Appleby to R. J. Sanders, subject to the claim of Pearsons & Taft of $23,000 secured by a deed of trust.

The claim of Pearsons and Taft originated in 1916, when Sanders applied to Mr. A. L. Todd, of Murfreesboro, for a loan. Application for the loan was forwarded by Mr. Todd to the Chicago office of Pearsons & Taft, and an appraiser was sent to Tennessee, who, after examination, approved the loan.

The deed of trust and notes were prepared in Chicago and sent to Mr. Todd in Tennessee, where R. J. Sanders and wife, Sallie J. Sanders, executed the deed of trust, and R. J. Sanders signed the notes. They were then forwarded to Chicago with a written order signed by Sanders and wife directing how the proceeds of the loan should be applied. The principal note of $23,000 due April 1, 1926, and annual interest notes, were made payable to the order of R. J. Sanders, and are described in the deed of trust given to secure them, executed March 20, 1916, by Sanders and wife to Harry Lee Taft, trustee.

The principal and interest notes secured by the deed of trust above referred to were indorsed by R. J. Sanders in

blank and delivered to the Chicago office of Pearsons and Taft, an Oklahoma corporation. The notes were the property of Pearsons & Taft when Appleby assumed their payment. February 22, 1919, R. J. Sanders and wife conveyed the 568-acre tract covered by deed of trust, and another tract of 32.4 acres, to S. C. Appleby for the consideration of $85,000. The conveyance recites that the 568-acre tract is incumbered by the deed of trust to Harry Lee Taft, and that Appleby assumes the debt therein secured. For the remainder of the consideration Appleby executed to Sanders two lien notes of $10,000 and twenty-one lien notes of $2,000 each. After assuming the mortgage notes Appleby paid the interest annually April 1, 1919, 1920, 1921, and 1922 to Pearsons & Taft.

Two of the $2,000 lien notes executed by Appleby to Sanders became assets of the estate of E. E. Reed, whose executor filed the original bill to enforce payment. Pearsons & Taft, holder of the mortgage debt, and Harry Lee Taft, trustee, S. C. Appleby, maker of the purchase-money notes, R. J. Sanders, indorser, and all holders of the Appleby notes were joined as defendants in the bill, which prayed for a sale and application of the proceeds to the satisfaction of the purchase-money notes, subject to the rights of Pearsons & Taft under its deed of trust. All the parties answered. John C. Fox and A. B. Sanders, assignees of R. J. Sanders, and R. J. Sanders and S. C. Appleby, denied the right of Pearsons & Taft to enforce payment of its mortgage debt alleging it to be a foreign corporation not domesticated or authorized to do business in Tennessee, and therefore without authority to enforce its contracts in this State. They insist that all the proceeds of sale should be devoted to the payment of the Appleby notes. In a cross-bill they also attack the validity of the

Pearsons & Taft claim on similar grounds, and seek to have the entire proceeds from the sale of the land applied to the purchase-money notes. Pearsons & Taft, by their local counsel, in answer to the original bill, erroneously fixed the corporate domicile in Chicago, when in fact it was in Muskogee, Okla. This was corrected by an amendment to the answer and in subsequent pleadings.

Pearsons & Taft answered the cross-bill of A. B. Sanders and others, and later in the progress of the cause filed a petition asserting ownership of the notes secured by the deed of trust, and their priority in the distribution of the proceeds of sale of the 568-acre tract, and because of this litigation ask for a reasonable attorney's fee authorized by the deed of trust.

The chancellor found that Pearsons & Taft did not carry on business in Tennessee in such manner as required it to domesticate, but, if it did, that the corporation complied with the Tennessee statutes, and was domesticated, that the note of $23,000 executed by Sanders, and the interest notes were the property of Pearsons & Taft sesured by the deed of trust to Harry Lee Taft, trustee, and constituted a prior lien upon the 568-acre tract described in the bill. A decree was accordingly rendered for the sum due upon the notes with $2,518 attorney's fee to be paid out of the proceeds derived from the sale of the 568-acre tract of land. S. C. Appleby, R. J. Sanders, and A. B. Sanders and John C. Fox assignees, appealed, and assign error.

The first, second, fourth, and fifth assignments of error involve an attack upon the validity of the corporate organization of Pearsons & Taft under the laws of Oklahoma, and its authority to carry on business in Tennessee.

It is urged:   (1) That Pearsons & Taft was not legally incorporated according to the laws of Oklahoma; (2) that it had not complied with the statutes of Tennessee by domesticating and paying the privilege tax as required by the statutes of this State; (3) that it had not complied with the Blue Sky Law—wherefore it is contended the deed of trust is not enforceable in the courts of this State, and the petition should have been dismissed, and the proceeds of sale applied exclusively to the Appleby notes.

In response to the third assignment of error it is sufficient to say that Pearsons & Taft limited its activity in Tennessee exclusively to real estate loans, a purpose for which it was organized, which is a business excluded by section 1, chapter 31, Acts First Extra Session of 1913, from the class designated as "investment companies." Moreover, not being engaged in the sale of securities and limiting its activity to the ordinary business of the corporation, compliance with the Blue Sky Law was not required. *Goodyear* v. *Meux,* 143 Tenn., 287, 228 S. W., 57; *Warehouse* v. *Sentelle,* (Tenn.), 255 S. W., 589; *Biddle* v. *Smith,* (Tenn.) 256 S. W., 454.

Under the first assignment of error it is urged that the original articles of incorporation of June, 1912, declared the purpose of engaging in the real estate mortgage loan business, whereas under amended articles of November, 1912, additional inconsistent purposes are declared and powers conferred "to engage in the commission and brokerage business, accept securities for safe-keeping, issue bonds, debentures and corporate obligations," etc.   This assignment involves a collateral attack upon the corporate organization.

Section 5293 of the Compiled Statutes of Oklahoma of 1921 provides:

"The due incorporation of any company, claiming in good faith to be a corporation under this chapter, and doing business as such, or its right to exercise corporate powers, shall not be inquired into collaterally, in any private suit to which such *de facto* corporation may be a party; but such inquiry may be had, and action brought, at the suit of the State."

So in Tennessee the validity of the corporate organization under the act of 1875 cannot be collaterally attacked by those who recognize and deal with it as a corporation. *Anderson* v. *Railroad,* 91 Tenn., 44, 17 S. W., 803; *Miller* v. *Insurance Co.,* 92 Tenn., 183, 21 S. W., 39, 20 L. R. A., 765; *Merriman* v. *Magiveny,* 12 Heisk. (59 Tenn.) 494.

"The general rule, supported by an almost unanimous consensus of judicial opinion, and sometimes expressly declared by statute, is that the legality of the existence of a *de facto* corporation can be questioned only by the State in a direct proceeding, and cannot be collaterally attacked or litigated in actions or proceedings between private individuals or other corporations or between them and the alleged corporation itself.

"The doctrine in relation to *de facto* corporations is based upon the principle that the State, which alone has the power to incorporate, may waive irregularities in the organization of corporations, and so long as the State remains inactive in the premises others must acquiesce." 14 C. P. par. 216, page 204; 14 C. J. par. 235, page 227.

In Oklahoma articles of incorporation are authorized by general laws, and, as in Tennessee, the Oklahoma statutes limit the powers of a corporation to specified purposes.

Corporations are usually formed by the adoption of articles of association or incorporation in pursuance of general incorporation laws enacted by the legislature. The articles of association of a company thus organized, taken in connection with the laws under which the organization takes place, form the constitution or charter of the company. The word "charter" used in this connection refers to the franchises authorized by the laws of the State, and describes the fundamental agreement between the incorporators. Unauthorized provisions included in such articles do not vitiate the charter, but are treated as surplusage. As stated by the court in *Anderson-Dulin-Varnell Co.* v. *Williams,* 255 S. W., 597:

"It is well settled that matter included, not prescribed by the specific forms adopted by this act and its amendments, adds nothing legally, and in construing the charter will be read out of it; and, as a corollary, that the inclusion of such unauthorized matter does not impair the validity of the charter. *Williams* v. *Railroad Co.,* 9 Baxt., 488; *Tenn. Automatic Lighting Co.* v. *Massey* (Tenn. Ch. App.) 56 S. W., 35; *Shoun* v. *Armstrong* (Tenn. Ch. App.), 59 S. W., 790; *Heck* v. *McEwen,* 12 Lea, 97." 255 S. W., 599.

It follows that this assignment is without merit.

It is next urged that Pearsons & Taft failed to domesticate as required by our act of 1891 and subsequent amendments carried into Shannon's Code, section 2546, and that the contract with Sanders, assumed by Appleby, cannot be enforced for the reasons stated in *Gilmer* v. *Saving & Loan Co.,* 103 Tenn., 272, 52 S. W., 851; *Cary-Lumbard Lumber Co.* v. *Thomas,* 92 Tenn., 587, 22 S. W., 743; *Interstate Amusement Co.* v. *Albert et al.,* 128 Tenn.

417, 161 S. W., 488; *Cunnyngham* v. *Shelby*, 136 Tenn., 176 188 S. W., 1147, L. R. A. 1917B, 572.

Pearson & Taft filed a certified copy of its articles of incorporation in the office of the secretary of State of Tennessee, June 10, 1914, and on July 1, 1914, and yearly thereafter, filed the report and paid the tax required by chapter 434 of the Acts of 1907. Despite this, appellants insist that chapter 122 of the Acts of 1891, as amended by chapter 81 of the Acts of 1895, was not met, because the charter was not legally authenticated. To sustain this insistence, *Loan Co.* v. *Miller,* (Tenn. Ch. App.), 47 S. W., 17, is cited.

Under the statutes of Oklahoma, and practices in that State, the manner of obtaining a charter is different from that in Tennessee. Those desiring to organize a corporation prepare and file articles of incorporation in the office of the secretary of State where the original is kept on file, and a certificate is issued by the secretary of State reciting the fact of incorporation, the name of the company, the amount of the capital stock, and the names of the incorporators who are to serve as directors and officers until the election of their successors. The articles of incorporation are not delivered to the incorporators with a certificate of the secretary of State attached as in Tennessee, so that it was necessary to procure from the office of secretary of State of Oklahoma a certified copy of the articles of incorporation when the company desired to domesticate in this State. This was done, and the articles, being certified by their custodian, the secretary of State of Oklahoma, were filed with the secretary of State of Tennessee.

The case of *Loan Co.* v. *Miller,* (Tenn. Ch. App.), 47 S. W., 17, construes the acts of 1891 and 1895, and holds that the copy of a charter authenticated by the secretary of the company is sufficient, but does not hold that authentication is exclusively limited to the secretary of the corporation.

Section 5310 of the Compiled Statutes of Oklahoma of 1921 provides that copy of articles of incorporation filed with the secretary of State as provided by law, when certified to by him, constitutes competent evidence in the courts of Oklahoma. Authentication by the secretary of the corporation of the certificate issued to the incorporators by the secretary of State of Oklahoma was not sufficient to convey the information required by our acts of 1891 and 1895. It would be necessary in any event to obtain the certified copy of articles of incorporation from the secretary of State, after which it was not necessary for the secretary of the corporation to exercise the vain and useless act of attempting to add verity to the certificate of secretary of State.

Chapter 81, Acts of 1895, provides:

"That each and every corporation created or organized under, or by virtue of, any government other than that of the State, for any purpose whatever, desiring to own property, or carry on business in this State of any kind or character, shall first file, in the office of the secretary of State, a copy of its charter. It shall be sufficient to authenticate such copies so filed by the certificate of the secretary, or secretaries, of such corporations, and by attaching thereto the corporate seal."

Chapter 122 of the Acts of 1891 provides:

"That when a corporation complies with the provisions

of this act it shall then be, to all intents and purposes, a domestic corporation, and may sue and be sued in the courts of this State, and subject to the jurisdiction of the courts of this State just as though it were created under the laws of this State."

It will be observed that section 1 of the act of 1895 does not limit the authority to authenticate copy of charters to the secretary of the corporation. In the absence of specific statutory direction as to who shall certify copy of articles of incorporation, required for filing under the act of 1891 and amendatory act of 1895, it may be done by the official custodian of the records. It is sufficient for the secretary of the corporation to authenticate the copy if he is custodian of the original.

There is no error in the decree of the chancellor, and it is affirmed.