(82 South. 439)

MINGE v. CLARKE. (6 Div. 899.)

(Supreme Court of Alabama. May 22, 1919. Rehearing Denied June 30, 1919.)

1. CORPORATIONS ⬠99(1) — ISSUANCE OF STOCK—PART PAYMENT IN MONEY—CONSTITUTION.

Where plaintiff paid $12,000 for the $25,000 par value of stock which he received, it cannot be said that the stock was not issued for money, labor done, or property actually received, in violation of Const. 1901, § 234.

2. CORPORATIONS ⬠120 — STOCK—CONTRACT TO REPURCHASE—VALIDITY.

Where an incorporator received $12,000 from a purchaser of stock, and, besides $12,000 in stock issued to such purchaser, $13,000 was issued to him through the incorporator, the in-

corporator cannot defend the purchaser's action against him on contract to repurchase the entire holding for $12,000, on the ground that Const. 1901, § 234, requiring stock to be issued for money, labor done, or property actually received, was violated, though the company received from the incorporator for the stock issued to him and transferred to the purchaser only property mortgaged to its full value, and though the purchaser knew the incorporator's equity was valueless.

3. APPEAL AND ERROR ⬠1040(6)—HARMLESS ERROR—RULINGS ON DEMURRERS.

Any error in sustaining demurrers to defendant's pleas because they were not demurrable for any cause assigned against them was harmless to defendant, where, even if the rulings had been otherwise, the pleas could not have been sustained under the agreed statement of facts.

Appeal from Circuit Court, Jefferson County; C. B. Smith, Judge.

Suit by W. C. Clarke against John H. Minge. From judgment for plaintiff, defendant appeals. Affirmed.

Phares Coleman and London, Yancey & Brower, all of Birmingham, for appellant. J. H. Bankhead, Jr., and A. F. Fite, both of Jasper, for appellee.

SAYRE, J. Appellant, Minge, owned a cotton oil mill at Faunsdale which was mortgaged to its full value. He proposed to form a corporation with a capital stock of $50,000 to operate the mill, and as inducement to appellee, Clarke, to put $12,000 into the corporation, for which the latter was to receive stock at par, he entered into a contract with Clarke in which he (Minge) agreed to transfer to Clarke $13,000 of stock in addition to the $12,000 paid for, and further agreed to purchase Clarke's entire holding ($25,000) for the sum of $12,000 with interest, less any dividends earned in the meantime, if at the end of two years the corporation should have failed to make a net earning of $24,000. Plaintiff, appellee, sued on this contract, alleging that at the end of two years the corporation had failed to make a net earning of $24,000. Defendant pleaded a number of pleas, including plea 11, which last-named plea alleged that the contract sued on was null and void in this:

"In the year 1911 a corporation was organized in the state of Alabama under the name and style of the Faunsdale Oil Mill, and a large amount of the stock of said corporation was issued to the plaintiff in this cause, and it is for an alleged contract of sale of all or a part of said stock by plaintiff to defendant which is the foundation of this suit. And defendant avers that the issuance of said stock to plaintiff was contrary to and in violation of section 234, art. 12, of the Constitution of Alabama, is this, that said stock was not issued 'for money, labor done or property actually received.' "

This plea is in identical language with plea 7 shown by the report of Minge v. Clarke, 190 Ala. 388, 67 South. 510. In that case, however, it may be well to note at this point, Minge was the plaintiff and the contract sued upon was a different contract from that declared upon in the present case. Errors are assigned on the rulings by which demurrers were sustained to pleas 7, 8, 9, 10, 12, and 13, and upon the judgment rendered, the cause having been tried by the court, without a jury, upon the pleadings and an agreed statement of facts.

[1] Defendant's contention that plea 11 was proved cannot be allowed. Plaintiff paid $12,000 in real money for the stock he got, and, while the sum so paid was only 50 per cent. of the face of all the stock, it is clear that his stock was in part at least based upon money and represented actual capital. It is not true, therefore, that "said stock" was not issued for money, labor done, or property actually received.

[2] If it be conceded that the corporation received from defendant, as consideration for the stock issued to him, only property which was mortgaged to its full value (this being the reliance of the pleas other than that one numbered 11), and if it be assumed that plaintiff knew defendant's equity in the property was of no value (a consideration of which the pleadings take no account), still these facts did not render plaintiff's stock void or valueless nor even the stock issued to defendant. Plaintiff, as we have stated, paid $12,000 for his stock, and every share of stock issued by the corporation represented a proportionate interest in that fund, and to that extent at least had value, was a legitimate subject of barter and trade. As the court observed in the analogous case of Beitman v. Steiner Bros., 98 Ala. 241, 13 South. 87, this method of incorporation might have afforded grounds for a writ of quo warranto against the company, and we do not doubt that creditors of the corporation might have called upon the defendant to make good the difference between the value of the property contributed by him and the face value of the stock issued to him; but exemption from this liability, if in fact there were creditors to be affected, constituted no part of the consideration for the contract on which this action is based, nor ought the defendant to be heard to assign the fact that he got stock for nothing as a reason why stock for which plaintiff paid value should be held void. The whole consideration for defendant's promise—a detriment of $12,000 to plaintiff—has moved to him, and he must pay accordingly unless, notwithstanding he has received what he bought, it would be against public policy to enforce his obligation. Beitman v. Steiner Bros., supra. The public policy on this subject is expressed in the language of the Constitution. It is that—

"No corporation shall issue stocks or bonds except for money, labor done, or property actually received."

This provision and the statute enacted in consonance therewith confer rights upon creditors as against stockholders, and in some cases, as in Fitzpatrick v. Dispatch Publishing Co., 83 Ala. 604, 2 South. 727, where the court enjoined a prospective issue of fictitious stock, confer rights upon stockholders as against stockholders; but we apprehend it was not intended to make of the fact that one stockholder gets his stock for worthless property a ground for the forfeiture of the stock of another stockholder or the money he paid for it, even though the latter was privy to the issue of the fictitious stock. Plaintiff's stock had value, and he had a right to dispose of it to defendant or any one else, and the effectuation of his contract right by an action at law does not in any sense depend upon proof of the fact that he connived in the issue of other stock to defendant for property that was worthless. This much upon the broad merits of the case. In strict law and fact it cannot be said that the stock issued to defendant offended against the Constitution because issued for property not actually received. Property was received for defendant's stock, and its prospective, if not present, value, may have been of some consideration; but, whether its value was considerable or not, it was not proved, as alleged in the pleas, that defendant's stock was not issued for money, labor done, or property actually received.

[3] If, as appellant contends, there was error in sustaining demurrers to his pleas for the reason that they were not demurrable for any cause of demurrer assigned against them, such rulings were harmless to appellant; for, had the rulings been otherwise, the agreed statement of facts shows that the pleas could not have been sustained.

Affirmed.

ANDERSON, C. J., and McCLELLAN and GARDNER, JJ., concur.