(89 South. 790)

**RANDLE v. WINONA COAL CO. et al. (6 Div. 465.)**

(Supreme Court of Alabama.   June 23, 1921.)

**1. Constitutional law ⬤═▷48—One attacking statute has burden of proving it unconstitutional.**

One who attacks the constitutionality of a statute must prove it unconstitutional.

**2. Constitutional law ⬤═▷14 — Constitutional provisions asi to life, liberty, and property construed liberally in favor of citizen.**

Constitutional provisions designed for the security of the elementary rights of life, liberty, and property should be construed liberally in favor of the citizen.

**3. Corporations ⬤═▷60—Corporate "stock" defined.**

Corporate stock is evidence of the right of the holder or owner to share in the proceeds of the corporation's property, and typifies an aliquot part of the corporation's property, or the right to share in its proceeds to extent indicated when distributed according to law and equity.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Stock.]

**4. Corporations ⬤═▷38 — Can change capital stock only in method provided for by statute.**

A corporation has no implied power to change its capital stock provided for in its charter as originally granted or amended, under Code 1907, § 3446, subd. 4, and can effect such change only by compliance with section 3480.

**5. Corporations ⬤═▷71, 99(2)—Act authorizing charter amendment to issue nonpar stock held not to violate constitutional prohibition as to issue of stock without consent of two-thirds of stockholders, or except for money, labor done, etc.**

Acts 1919, p. 699, §§ 2, 3, authorizing corporations to amend charters so as to provide for issuance of stock with no par value in lieu of existing stock with par value *held* not violative of Const. 1901, § 234, prohibiting a corporation from issuing stock except for money, labor done, or property actually received, or section 237, prohibiting issuance of preferred stock without consent of owners of two-thirds of the stock.

**6. Corporations ⬤═▷197—Statute providing for amendment of charter so as to restrict voting power of preferred stock held constitutional.**

Acts 1919, p. 699, §§ 2, 3, authorizing amendment of charter of corporation so as to restrict voting power of preferred stock except as to matters designated in section, and repealing Acts 1909, p. 321, and Code 1907, § 3479, relating to voting rights of stockholders, *held* constitutional under Const. 1901, § 229, in view of sections 234 and 237.

**7. Corporations ⬤═▷70—Charter amendment, providing for issuance of nonpar stock, not a violation of constitutional rights of nonassenting stockholder.**

Amendment of a charter under Code 1907, § 3462, and Acts 1920, p. 136, providing for issuance of nonpar stock under Acts 1919, p. 698, to existing stockholders in place of existing stock of the par value of $100 on vote of two-thirds of the stockholders, *held* not violative of any constitutional right of nonassenting stockholder.

**8. Corporations ⬤═▷35—Rule as to commencement of corporate existence stated.**

If a corporation is created by special charter in present terms not imposing conditions precedent, the corporate existence commences as soon as the act takes effect, and is expressly and impliedly accepted, but if the act requires organization or the performance of conditions precedent, corporate existence commences only when there has been substantial performance.

**9. Corporations ⬤═▷38—Legislature may authorize amendment of charter in compliance with constitutional and statutory requirements.**

Under Const. 1901, §§ 229, 238, the Legislature may authorize corporators or members to amend the charter or articles in compliance with constitutional and statutory requirements.

⬤═▷For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**10. Corporations ⊘⊐38—Statutory requirements as to amendment must be substantially complied with if working material change in nature and purpose of corporation.**

If proposed amendment works a material change in the nature and purpose of a corporation, the statutory requirement as to amendment must be substantially complied with, and amendment must be of such character as is authorized by law.

**11. Constitutional law ⊘⊐126—Constitutional provision as to amendment of charter a part of contract of stockholder in corporation organized subsequent to adoption of constitutional provision.**

Const. 1901, § 229, making the charter of a corporation subject to amendment, alteration, or repeal under general laws, is a part of the contract of the holder of stock of the corporation organized after the adoption thereof.

**12. Corporations ⊘⊐38—Filing and recordation of fundamental amendment necessary before corporation may act thereunder.**

Under Code 1907, § 3448, Acts 1919, p. 698, and Acts 1920, p. 136, a corporation cannot act under amendment to charter working a fundamental change, until the change in the charter has been effected by filing and recordation of amendment, but if the change is not fundamental, the formalities are merely directory.

**13. Corporations ⊘⊐38—Charter amendment to issue nonpar stock to be filed and recorded before acting thereunder.**

Amendment to charter providing for issuance of nonpar stock to existing stockholders in place of existing stock *held* a fundamental change, requiring the corporation to file and record the amendment before acting thereunder.

Appeal from Circuit Court, Walker County; T. L. Sowell, Judge.

Bill by E. P. Randle against the Winona Coal Company and the officers and directors thereof to enjoin them from filing an amendment to its charter and for doing any corporate act under said amendment. From a decree sustaining demurrer to the bill, complainant appeals. Affirmed.

John H. Bankhead, of Jasper, for appellant.

The action taken to amend the charter was improper, since the non-par act, under which the action was taken, was violative of sections 234 and 237, Const. 1901. 96 Ala. 238, 11 South. 428, 17 L. R. A. 375; 87 Ala. 725, 6 South. 702, 6 L. R. A. 218; 97 Ala. 111, 12 South. 377, 38 Am. St. Rep. 151; 83 Ala. 604, 2 South. 727; 190 Ala. 388, 67 South. 510; 172 Ala. 232, 55 South. 193; 9 Howard Decisions, 627.

Arthur F. Fite, of Jasper, for appellees.

The burden is on the complainant to show the unconstitutionality of the act. 180 Ala. 473, 61 South. 597; 180 Ala. 489, 61 South. 368; 183 Ala. 91, 63 South. 201, and cases cited. The alleged stated authority over corporations is derived from section 229, Const. 1901, as limited by sections 231, 233, 234, and 237, Const. 1901. Stock in corporations has a legal definition. 173 Ala. 398, 56 South. 235; 169 Ala. 503, 53 South. 1028. This statute has attention by adoption and construction in 21 states and has been held constitutional. 282 Mo. 261, 221 S. W. 728; 105 Kan. 161, 181 Pac. 625; 211 Mich. 320, 178 N. W. 697, 182 N. W. 526. See, also, 150 Ala. 222, 43 South. 581; 182 Ala. 138, 62 South. 734; 170 Ala. 379, 54 South. 268; 173 Ala. 398, 56 South. 235; 169 Ala. 503, 53 South. 1028. Only one meeting of the stockholders was necessary. Section 3462, Code 1907, as amended Acts 1919, p. 698, and Acts 1920, p. 126.

THOMAS, J. The bill sought to enjoin respondents from filing a certified copy of amendment to corporate charter of Winona Coal Company, and from doing corporate acts thereunder.

The alleged amendment purports to have been adopted after due notice by the holders of two-thirds in value of outstanding stock in said corporation, who will (1) authorize the issuance of stock, common or preferred, without nominal or par value; (2) "change the par value of the shares of stock from one hundred dollars per share to common stock without nominal or par value"; and (3) increase the capital stock of the corporation from 100 shares of common stock of the par value of $100 per share, to 11,000 shares of stock without nominal or par value, of which 10,000 shares would be common stock, and 1,000 shares preferred stock.

The original articles of incorporation recited as to its capitalization that—

"The amount of the total authorized capital stock of the said * * * corporation is ten thousand dollars, of the par value of one hundred dollars per share; and that the amount of capital stock with which said proposed corporation will begin business is three thousand dollars. * * * That the names and post office addresses of the incorporators, and the number of shares of stock subscribed for," were as stated and paid in as so subscribed by the complainants, Dimmick and Aldridge.

The equity of the bill is grounded on the assumption that sections 2 and 3 of the "Non Par Act," by Mr. Acker, approved September 26, 1919 (Gen. Acts, p. 698), are in violation of sections 234 and 237 of the Constitution of 1901. It is averred that—.

"* * * The said officers, complying with such certificate, will issue certificates of stock of said corporation without nominal or par value in lieu of and in exchange for existing certificates of the shares of stock of said corporation now outstanding, claiming authority so to do under section 3 of the act of the Legisla-

⊘⊐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ture of Alabama approved September 26, 1919, entitled 'an act to prescribe the various classes of stock that may be issued by corporations, to declare the rights, powers and limitations of the holders of the same, and to prescribe the methods of authorizing the issue thereof, and to provide a remedy against any unauthorized or illegal issue thereof heretofore or hereafter made, and a statute of limitations barring that or any other remedy against the same;' * * * that said officers and directors have contracted to sell and will issue preferred stock of said corporation without nominal or par value in pursuance of the authority conferred by sections 2 and 3 of said act of September 26, 1919 (Acts 1919, p. 698), which said preferred stock will have the preferences and rights set forth in the * * * purported amendment of said charter; * * * that said new shares of stock, both common and preferred, will be sold at a price less than $100 per share, regardless of the fact that orator heretofore paid $100, the full par value of the shares of stock so owned by him, and regardless of the fact that the value of complainant's shares will be seriously diminished thereby; * * * that the act of said corporation in exchanging such shares of stock without nominal or par value for shares of stock of said corporation now outstanding, and the proposed issue and sale of common stock without nominal or par value, is without authority of law. * * *"

[1, 2] The duty of this court in passing upon the constitutionality of legislative acts has often been defined. Lovejoy v. City of Montgomery, 180 Ala. 473, 61 South. 597; Fairhope S. T. Corp. v. Melville, 193 Ala. 289, 306, 69 South. 466; McDavid v. Bank, 193 Ala. 341, 350, 69 South. 452; State ex rel. Mobile v. Commissioners, 180 Ala. 489, 61 South. 368; Ex parte Bozeman, 183 Ala. 91, 63 South. 201. It is elemental that one assailing a statute on the ground that it is unconstitutional assumes the burden of vindicating his position, and that the constitutional provisions designed for the security of the elementary rights of life, liberty, and property should be construed liberally in favor of the citizen. State ex rel. Meyer v. Greene, 154 Ala. 249, 254, 46 South. 268, and authorities collected in Williams v. Schwarz, 197 Ala. 40, 46, 47, 72 South. 330, Ann. Cas. 1918D, 869; Denson v. Ala. F. & I. Co., 198 Ala. 383, 393, 73 South. 525.

Of pertinent constitutional provisions is the general authority of the Legislature to enact laws for the formation and government of domestic corporations, derived from section 229, as follows:

"The Legislature shall pass no special act conferring corporate powers, but it shall pass general laws under which corporations may be organized and corporate powers obtained, subject, nevertheless, to repeal at the will of the Legislature; and shall pass general laws under which charters may be altered or amended. The Legislature shall, by general law, provide for the payment to the state of Alabama of a franchise tax by corporations organized under the laws of this state, which shall be in proportion to the amount of capital stock; but strictly benevolent, educational or religious corporations shall not be required to pay such a tax. The charter of any corporation shall be subject to amendment, alteration or repeal under general laws."

This power is subject to the inhibitions of the Constitution, of which are section 234:

"No corporation shall issue stocks or bonds except for money, labor done, or property actually received; and all fictitious increase of stock or indebtedness shall be void. The stock and bonded indebtedness of corporations shall not be increased except in pursuance of general laws, nor without the consent of the persons holding the larger amount in value of stock, first obtained at a meeting to be held after thirty days' notice, given in pursuance of law."

The further provisions are that "no corporation shall issue preferred stock without the consent of the owners of two-thirds of the stock of said corporation" (section 237); and that—

"The Legislature shall have the power to alter, amend or revoke any charter of incorporation now existing and revocable at the ratification of this Constitution, or any that may be hereafter created, whenever, in its opinion, such charter may be injurious to the citizens of this state, in such manner, however, that no injustice shall be done to the stockholders." Section 238.

The fact that within the last few years 21 states of the American Union—Alabama, Acts 1919, p. 698; California, Laws 1917, c. 215, 701; Colorado, Sess. Laws 1919, pp. 347, 350, § 3; Delaware, Laws 1917, c. 113, § 4a; Gen. Corp. Law 1920, p. 15, § 4a; Idaho, Laws 1921, S. B. 193, p. 413; Illinois, Laws 1919, H. B. 664, p. 312; Kansas, Laws 1921, H. B. 261, p. 234; Maine, Laws 1917, c. 144; Maryland, Business Corp. Law (1920), as amended by chapter 545; Massachusetts, Laws 1920, c. 349, p. 361; New Hampshire, Laws 1919, c. 92; New Jersey, Laws 1920, c. 168; New York, Stock Corp. Law (Consol. Laws, c. 59) §§ 19–24; North Carolina, Laws 1921, c. 116; Ohio, Laws 1919, S. B. 210, p. 1287, as amended by Laws, 1920, subs. 1, S. B. 67, p. 273; Pennsylvania, Laws 1919, c. 363 (Pa. St. 1920, §§ 5656–5667); Rhode Island, Laws 1920, c. 1925; Utah, Laws 1921, c. 22; Virginia, Laws 1919, c. 48; West Virginia, Laws, 1st Extra Sess. 1920, c. 3; Wisconsin, Laws 1919, c. 681, p. 1230—have enacted laws providing for the organization of corporations with "nonpar" capital stock, having no par or face value or for the amendment of existing charters to authorize the issue of such capital stock, is an unimportant consideration in a decision of the question of the constitutionality of the Alabama statute containing the provision that—

"Sec. 3. Any corporation heretofore or hereafter organized under the laws of the state of Alabama, other than building and loan associations, insurance companies, banks and trust companies, may if so provided in its certificate of incorporation or any amendment thereof or joint agreement of merger or consolidation duly adopted as provided by the laws of Alabama, issue shares of stock, either common or preferred, without any nominal or par value. Every share of such stock without nominal or par value shall be equal to every other share of such stock, except that the certificate of incorporation or any amendment thereof or joint agreement of merger or consolidation may provide that such stock shall be divided into different classes with such preferences, designations and voting powers or restrictions or qualifications thereof as shall be stated therein, but all common stock issued shall be subordinate to the preferences given to preferred stock, if any. Unless otherwise provided in the certificate of incorporation or any amendment thereof or joint agreement of merger or consolidation, stockholders shall be entitled to one vote for each share of such stock owned by them and may vote either in person or by proxy. Stock without any nominal or par value may be issued by the board of directors of the corporation from time to time for such consideration as may be fixed from time to time by the board of directors thereof, pursuant to authority conferred in the certificate of incorporation or any amendment thereof or joint agreement of merger or consolidation, or if such authority is not so conferred, then pursuant to authority of the holders of two-thirds of the stock then outstanding and entitled to vote given at a meeting called for that purpose in such manner as shall be prescribed by the by-laws, and any or all of such shares so issued, the full consideration for which has been paid or delivered, shall be deemed fully paid stock and not liable to any call or assessment thereon, and the holder of such shares shall not be liable for any further payments on account thereof either to the corporation or to its creditors. The preferences, rights, limitations, privileges and restrictions incident to stock without nominal or par value may be stated in dollars and cents per share in respect to shares of stock issued in pursuance of the provisions of this act. Nothing in this act contained shall be construed as excepting or relieving a corporation from any requirement of law as to the amount in dollars of paid in capital in cash or otherwise which it must have at the time of its organization.

"Sec. 4. In any case in which the law requires that the par value of the shares of stock of a corporation be stated in any certificate or paper, it shall be stated in respect of such shares that such shares are without par value, and wherever the amount of stock authorized or issued is required to be stated the number of shares authorized or issued shall be stated, and it shall also be stated that such shares are without par value. For the purpose of the taxes prescribed to be paid on the filing of any certificate or other paper relating to corporations, and of franchise taxes prescribed to be paid by corporations to the state of Ala-

206 ALA.—17

bama, but for no other purpose, such shares shall be taken to be of the value of one hundred dollars per share."

Acts 1919, pp. 699–701.

[3] It is important to keep in mind our definition of stock in a corporation: It is "only evidence of the right of the holder or owner to share in the proceeds of the corporation's property," and typifies an aliquot part of the corporation's property, or the right to share in its proceeds," to the extent indicated "when distributed according to law and equity." Hall & Farley v. Ala. T. & Imp. Co., 173 Ala. 398, 414, 56 South. 235; Marbury Lbr. Co. v. Hunter, 169 Ala. 503, 506, 53 South. 1028; Hall & Farley, etc., v. Henderson, 126 Ala. 449, 481, 28 South. 531, 61 L. R. A. 621, 85 Am. St. Rep. 53.

What provision of section 234 of the Constitution, as construed by this court, does the act offend? In Fitzpatrick v. Dispatch Pub. Co., 83 Ala. 604, 607, 2 South. 727, it was held that a corporation engaged in publishing a newspaper, with a paid-up capital of $10,000, had no authority to double its capital stock, distributing the new stock among its stockholders as a stock dividend, on the mere statement that its capital had been invested in property which has more than doubled in value, and is now worth $20,000, over and above all liabilities. Mr. Chief Justice Stone said of article 14, section 6 (Constitution 1875), the same as section 234 of the Constitution of 1901:

"The Constitution, in terms, inhibits the issue of fictitious stock; that is, stock which has no valuable thing, or corporate assets, to rest on, and of which it is the representative. If it represents nothing, and has nothing to stand on it is fictitious; it is fraudulent; it is unconstitutional. * * * It behooves constituted authority to keep well abreast with the many inventions which modern cupidity has wrought out, and which, perhaps, more than any other agency, have called into exercise pernicious principles which threaten the overthrow of organized government. In this highly conservative, yet restraining spirit, the principle, constitutional and statutory, on which this case mainly hinges, had its origin, and finds its justification. Let us not, by timid interpretation impair the strength of this bulwark, erected by our Constitution makers against the frauds which have become the reproach of the age we live in."

The later cases on this subject are Minge v. Clarke, 203 Ala. 189, 82 South. 439; Id., 190 Ala. 388, 592, 82 South. 439; Floyd v. State ex rel. Baker, 177 Ala. 169, 180, 59 South. 280; Williams v. Evans, 87 Ala. 725, 6 South. 702, 6 L. R. A. 218; Tutwiler v. Tuscaloosa, C. I. & L. Co., 89 Ala. 391, 7 South. 398; Elyton Land Co. v. Birmingham, etc., Co., 92 Ala. 407, 9 South. 129, 12 L. R. A. 307, 25 Am. St. Rep. 65; Perry v. Tuscaloosa, etc., Co., 93 Ala. 364, 9 South. 217;

Gay, Hardie & Co. v. Brierfield, etc., Co., 94 Ala. 303, 11 South. 353, 16 L. R. A. 564, 33 Am. St. Rep. 122; Smith v. Ala. Fruit, etc., Asso., 123 Ala. 538, 26 South. 232; Amer. Ice & Ind. Co. v. Crane, 142 Ala. 620, 39 South. 233.

Though the Fitzpatrick Case has been criticized in other jurisdictions (50 L. R. A. [N. S.] 72), the point of criticism was met by the holding that, where it is shown that a corporation has tangible surplus assets over the original corporate stock, additional stock may be issued for or to the extent of such surplus, and is not fictitious. State ex rel. White v. Citizens' L. & P. Co., 172 Ala. 232, 55 South. 193.

Pursuant to the mandates of section 229 of the Constitution, the Legislature made general provisions for incorporation and amendment thereof, regulation and control, dissolution and forfeiture of the franchise, etc., of a body corporate, as chapter 69, §§ 3445–3661, of the Code of 1907. The general authority contained in section 229 of the Constitution did not require a corporation to indicate in its articles of incorporation or charter the par value of its shares of stock in terms of "money, labor done, or property actually received." Its only reference to value is that provision for a franchise tax which was limited—"in proportion to the amount of capital stock." Const. § 234. It is not therein required that the certificate of stock issued by such body corporate indicate on its face its value in terms of money. As to value, its only inhibition is that corporations shall not issue stocks or bonds except for money, labor done, or property actually received; and such issue of stock not so predicated is declared to be a fictitious increase and void.

[4] The constitutional requirement that "no corporation shall issue preferred stock without the consent of the owners of two-thirds of the stock of said corporation" (section 237) presupposes the issue of preferred stock by a corporation after its organization, under express authority of law, for such issue of preferred stock pursuant to the terms of its charter or articles as originally granted or duly amended. Code 1907, § 3446, subd. 4; Heide v. Capital Sec. Co., 200 Ala. 397, 399, 76 South. 313; Granger's L. & H. Ins. Co. v. Kamper, 73 Ala. 325; Scovill v. Thayer, 105 U. S. 143, 26 L. Ed. 968. Such latter authority must exist, for a corporation has no implied power to change its capital stock, and changes thereof must be effected only by legislative sanction. Granger's L. & H. Ins. Co. v. Kamper, supra; Fairhope S. T. Corp. v. Melville, supra; Floyd v. State ex rel. Baker, supra; Citizens' L. & S. Co. v. Arwood, 17 Ala. App. 76, 81 South. 854; 7 R. C. L. pp. 202–204.

It is not of constitutional requirement, but that of the statute, that the amount of the total authorized capital stock and the number of shares into which the same is divided must be indicated in the articles of incorporation. Nor does the statute require that the value of the shares be expressed in the face of the certificate of stock when the corporation was being organized. It is only required that—

"The amount of the total authorized capital stock, which shall not be less than two thousand dollars; the number of shares into which the same is divided; the amount of capital stock with which it will begin business, which shall not be less than twenty-five per cent. of the authorized capital, and in no case less than one thousand dollars; but if the corporation is formed for the purpose of carrying on the business of banking, or that of a trust company, the amount of capital stock with which it will begin business shall in no case be less than twenty-five thousand dollars; or if the corporation is formed for the purpose of carrying on the business of insurance in any of its branches, or of any kind or nature, whatsoever, except title guaranty companies, the amount of capital stock with which it will begin business shall in no case be less than one hundred thousand dollars. If there be more than one class of stock created by the certificate there shall also be stated a description of the different classes of stock, with the term of which each class is created." Code 1907, § 3446, subd. 4; Floyd v. State ex rel. Baker, supra; State ex rel. Sanche v. Webb, 97 Ala. 111, 117, 118, 12 South. 377, 38 Am. St. Rep. 151; Randle v. Walker, 17 Ala. App. 211, 84 South. 551.

By section 3480 of the Code it is declared that capital stock or bonded indebtedness of a corporation formed under article 1, chapter 69, or theretofore incorporated under the general or special law of the state, may be increased or decreased by the consent of the persons holding the larger amount in value of the capital stock obtained in favor thereof at a regular meeting of the stockholders, or at a special meeting of the stockholders called for such purpose, of which due notice is required to be given, and notice of the proposed change to be made in the capital stock or indebtedness of the corporation. If the consent is given to "a specified increase of the capital stock or bonded indebtedness, a report thereof, certified by the president or secretary of the corporation, under the corporate seal" must be filed and recorded in the office of the judge of probate of the county in which the corporation was organized. If a decrease in its capital stock is desired and authorized as provided by statute, it may be "effected by retiring or reducing any class of the stock, or by the surrender by every shareholder of his shares and the issue to him in lieu thereof of a decreased number of shares," or by the purchase "at not above par of certain shares for retirement"; or by retiring shares owned by the corporation (Walsh v. State ex rel. Cook, 199 Ala. 123, 74 South. 45, 2 A. L. R.

551); or by "reducing the par value of the shares, provided no such decrease of capital stock shall release or otherwise affect the liability of any stockholders whose shares shall not have been fully paid, 'for debts of the corporation theretofore contracted." It is noted that no requirement is therein contained that the shares issued express in the face thereof their par or book value.

The statute for the issue of preferred stock by corporations organized under article 1 of chapter 69 of the Code (section 3479)—before amendment by act of September 26, 1919—provides that such issue may be authorized by a vote of two-thirds in value of the capital stock in the manner indicated by statute, and after certification thereof, and its filing and recording as therein provided in the office of the secretary of state. Thereafter "preferred stock in no case exceeding two-thirds of the capital stock paid for in cash or property may be issued;" each stockholder being entitled to the privilege of taking preferred stock in proportion to the amount of common stock held by him, or a less amount if he should desire it, before such stock is offered for sale to the public; and "the issue of preferred stock may be provided for at the time of the organization with the assent of the original subscribers to the capital stock expressed in their subscriptions." Heide v. Capital Sec. Co., supra.

The provisions of this statute contained no requirement that the value of the capital stock, common or preferred, be expressed in the face of the certificate. The authorities cited by appellant—Nelson v. Hubbard, 96 Ala. 238, 250, 11 South. 428, 17 L. R. A. 375; Williams v. Evans, 87 Ala. 725, 727, 6 South. 702, 6 L. R. A. 218; State ex rel. Sanche v. Webb, supra; Fitzpatrick v. Pub. Co., supra; Minge v. Clark, 190 Ala. 388, 396, 67 South. 510; State ex rel. White v. Citizens' L. & P. Co. 172 Ala. 232, 55 South. 193—all deal with the question of fictitious stock or issues prohibited by section 234 of the Constitution of 1901 (1875, art. 14, § 6). Such is not the instant case. There is nothing in the amendment to the articles of incorporation which were adopted on March 11, 1921, by the persons owning more than two-thirds of such capital stock of appellee corporation, to the effect that the proposed stock—preferred or common—would not be issued for money, labor done, or property actually received, as required by section 234 of the Constitution.

[5] The reason on which the authorities last cited are rested is that the purpose of said clause in the Constitution was to protect the public as well as the stockholders against worthless stock, and to prevent the fraudulent issue and marketing of fictitious corporate stock, "based on nothing valuable as a consideration for its issue." The issue of common or preferred stock without nominal or par value does not hold out to, or mislead, the public that money, labor, or property was not received by the corporation for the issue of its stock. It is merely a certificate to the holder of his interest in the corporate property, indicated by the number of shares, for its book value, and nearly approaches the definition of corporate stock given concise statement in Hall & Farley v. Ala. T. & Imp. Co., supra; Marbury Lbr. Co. v. Hunter, supra. The par value indicated on the face of a share of stock does not express the aliquot part of the corporation's property or the right to share in the proceeds of the corporation (before or on its dissolution) by the stockholder in any due distribution thereof, any more than would be expressed on the face of a share of "nonpar" corporate stock merely indicating the number of shares, and in which is not stated its par value. The stock is merely a muniment of title, not purporting to indicate the amount of capital invested or its value, and only indicating the "number of divisional interests" in the corporation evidenced thereby. Otherwise stated, the indication in the certificate of corporate stock of its par value has the effect only of declaring the actual money, labor, or property that has come into the corporation from its original subscriber, and in lieu thereof the owner's claim on, or interest in, the properties of the corporation, and that its original face value was the amount indicated. It is of common knowledge that economic and physical conditions are causes of fluctuation of the actual and market values of properties generally, and that corporate stocks are subject to such changes. Hence the par value indicated in the certificate of stock has not always represented its actual or book value. This fact, in a large measure, accounted for the substitution of "nonpar stock"—stock without any nominal or par value—for or in lieu of stock expressing a par value, and this change has tended to relieve the confusion or deception, the necessity for or embarrassment of explanation of discrepancy between the book or market value and the face value of corporate stocks.

[6] The authority of the Legislature to enact laws restricting the voting power of preferred stock is challenged by appellant, complainant. At said meeting of the stockholders of the instant corporation, among other things, it was sought to be provided that its charter or articles of incorporation be so amended as that holders of preferred stock, without stated par value, shall have "no voice or vote in the management of the corporation nor any proceedings requiring the affirmative vote or consent of the stockholders except" (1) as to the creation of bonded indebtedness, the increase of bond-

ed indebtedness, (2) the increase of capital stock, and (3) the increase of preferred stock, in each of which cases the holders of preferred stock "shall have full voting powers." We have noted that the Constitution made it the duty of the Legislature to pass general laws for the alteration or amendment of corporate charters (section 229); that "stock and bonded indebtedness of corporations shall not be increased except in pursuance of general laws, nor without the consent of the persons holding the larger amount in value of stock, first obtained at a meeting to be held after thirty days' notice, given in pursuance of law" (section 234). If the Legislature had no authority to pass laws restricting the voting power of stockholders (section 229), the last-quoted portion of section 234 would be without force, unnecessary. When section 234 is considered with the provision that the corporation shall not issue preferred stock without the consent of the persons owning two-thirds of the stock of the corporation (section 237), it is noted that there are no other constitutional provisions touching the rights of stockholders to participate in the management of the corporate affairs.

To define the rights of stockholders of corporations in respect to power, it was provided that—

"In all stockholders' meetings of corporations organized under the laws of Alabama, each stockholder is entitled to one vote for each share of stock held and owned by him, as shown by the stock books of the corporation." Acts 1909, p. 321; Walsh v. State ex rel. Cook, supra.

This act, with the provisions of Code, § 3479, regulated the right of voting by each stockholder of corporations organized under the laws of this state, at the time of the approval of the act "to prescribe the various classes of stock that may be issued by corporations, to declare the rights, powers and limitations of the holders of the same, and to prescribe the methods of authorizing the issue thereof, and to provide a remedy against any unauthorized or illegal issue thereof heretofore or hereafter made, and a statute of limitations barring that or any other remedy against the same." Gen. Acts 1919, p. 698. It is therein expressly provided that Code, § 3479, and all other sections or parts of sections, inconsistent therewith, and all acts or parts of acts inconsistent therewith, "are hereby repealed." An inspection of the field of operation of the provisions of the two acts (1909, p. 321; 1919, p. 698) shows irreconcilable conflict in so far as the former act granted to a preferred stockholder the unrestricted right to one vote for each share of stock held and owned by him as shown by the stock books of the corporation, and the provisions of the later act limited that right to instances or cases in which the same is accorded to which we have already adverted—and greatly limited that power in owners and holders of preferred stock. The former act has been modified or repealed by the act of September 26, 1919. Board, Jefferson Co. v. Hewitt, 90 South. 781;[1] Board of Rev. v. Johnson, 200 Ala. 533, 76 South. 859. The Legislature had in mind the respective provisions of sections 229 and 234 of the Constitution in making the restrictions and granting the right indicated by the act of September 26, 1919, section 1, to holders of preferred stock. It follows that legislative authority to enact general laws under which corporations may issue preferred stock with a limited voting power is not inhibited by the Constitution, except as we have indicated. On the averments of the bill it is not apparent that the certificate of stock presented, or to which appellant (complainant) will be entitled, indicating his holdings in respondent (appellee) corporation, does not or will not unlawfully restrict the voting power of any stockholder in the corporation or of preferred stockholders on questions reserved by the Constitution to such stockholders.

[7] In the last place the averment of the bill and the sustaining of demurrer thereto present for review the question whether the proposed amendment to the corporation's charter, to change its shares of original or authorized capital stock of the par value of $100 per share to shares without nominal or par value, make the due exchange thereof with its stockholders after said stockholders have been given the right to take and pay for such preferred stock as provided by law is offensive to the Constitution. We have adverted to Code, § 3462, providing for a change or amendment of the charter, change in the nature of its business, the par value of its shares of stock, etc. Heide v. Capital Sec. Co., supra. At the special session of the Legislature of 1920 an act was approved amending section 3462 of the Code and providing that every corporation chartered under article 1 of chapter 69 of the Code, or under any special or general law of the state, may change the nature of its business, the par value of its stock, the location of its principal office in this state, renew or extend its corporate existence, change its corporate name, and make other amendments, alteration or change of its charter as it may desire, by a resolution passed by the board of directors declaring that such change, alteration or extension is desirable, and "calling a meeting of the stockholders to take action thereon; if the holders of the larger amount in value of each class of stockholders having voting powers shall vote in favor of such alteration, change, amendment, or renewal, or extension, a report thereof, certified by the

---

[1] Post, p. 405.

president or secretary of the corporation, under the corporate seal" is required to be "filed and recorded in the office of the judge of probate of the county in which the corporation was organized," and "upon the filing of the same the certificate of incorporation shall be deemed to be so amended, or the corporate existence so renewed or extended." That is, if such certificate of "change, alteration, amendment, renewal, or extension, shall contain only such provisions as would be lawful and proper to insert in an original certificate of incorporation, made at the time of making such amendment." Acts 1920, p. 136.

[8] The question of when the life of a corporation (de jure) begins has been the subject of much judicial discussion. This time depends upon the particular statute under or by which the corporation is created. If by a special charter in present terms and without imposing conditions precedent, the corporate existence commences as soon as the act takes effect and is expressly or impliedly accepted. Lehman, Durr & Co. v. Warner, 61 Ala. 455, 465. If the act requires organization or the performance of conditions precedent, corporate existence commences only when there has been substantial performance. Dartmouth College v. Woodward, 4 Wheat. 518, 4 L. Ed. 629; McCartney v. Chi. E. R. R. Co., 112 Ill. 611; Glynmont Imp. & Ex. Co. v. Toler, 80 Md. 278, 286, 30 Atl. 651; Hanna & Finley v. Int. Petro. Co., 23 Ohio St. 622, 625; Williams v. State, 23 Tex. 264, 290; 14 C. J. 177, § 181.

[9] The rule as to amendments of charters of bodies corporate (generally) is said to be that like authority is necessary as for its creation, and that it cannot be amended except by or under constitutional and statutory authority. 1 Thomp. Corp. (2d Ed.) § 315; St. John v. Iowa Business Men's Building & Loan Association, 136 Iowa, 448, 113 N. W. 863, 15 L. R. A. (N. S.) 503; Colgate v. U. S. Leather Co., 75 N. J. Eq. 229, 72 Atl. 126, 19 Ann. Cas. 1262, 1265. The Legislature may, under its reserved power (Const. §§ 229, 238 [1901]; section 3, art. 14, 1875; Bernstein v. Kaplan, 150 Ala. 222, 43 South. 581; N. Y. & N. E. R. Co. v. Town of Bristol, 151 U. S. 556, 14 Sup. Ct. 437, 38 L. Ed. 269), authorize corporators or members to amend the corporate charter or articles in compliance with constitutional and statutory requirements (Carlisle v. Cahawba, etc., R. R. Co., 4 Ala. 70, 77; State ex rel. Perkins v. Montg. L. Co., 102 Ala. 594, 601, 602, 15 South. 347; L. & N. v. State ex rel. Gray, 154 Ala. 156, 217, 221, 223, 45 South. 296; S. & N. A. R. R. Co. v. Gray, 160 Ala. 497, 49 South. 347; Fire Department of N. Y. v. Kip, 10 Wend. [N. Y.] 269).

[10] In order to amend under general laws, if proposed amendment or alteration works material change in the nature and purpose of the corporation, is fundamental, it must not only be of such character as is authorized by law, but must be effected in a manner that is a substantial compliance with the statutory requirements. L. & N. v. State ex rel. Gray, supra; In re West. Bank & Tr. Co. (D. C.) 163 Fed. 713; Fishback v. Fond du Lac N. E. R. Co., 158 Fed. 88, 88 C. C. A. 367; Calif. T. & L. Co. v. Jordan, 19 Cal. App. 536, 542, 543, 126 Pac. 598; Capps v. Hastings Prosp. Co., 40 Neb. 470, 58 N. W. 956, 24 L. R. A. 259, 42 Am. St. Rep. 677; Day v. Mill Owners, etc., Co., 75 Iowa, 694, 697, 38 N. W. 113; Dist., etc., Co. v. People, 161 Ill. 101, 43 N. E. 779; Palmer v. Bank of Zumbrota, 72 Minn. 266, 277, 75 N. W. 380; Colgate v. U. S. Lea. Co., 75 N. J. Eq. 229, 72 Atl. 126, 19 Ann. Cas. 1262; Pope v. Merchants' Tr. Co., 118 Tenn. 506, 527, 103 S. W. 792; Anderson v. M. & R. Co., 91 Tenn. 44, 17 S. W. 803; State ex rel. M., St. P. & S. F. Ry. v. Railroad Comm. of Wis., 137 Wis. 80, 89, 92, 117 N. W. 846; First Nat. Bank v. Wilcox, 72 Wash. 473, 130 Pac. 756, 131 Pac. 203; Jackson v. Crown Point Min. Co., infra; Mower v. Staples, 32 Minn. 284, 20 N. W. 225; 7 Thomp. Corp. (1st Ed.) § 818.

From such general authority, and the reason on which the same is rested, the rule is that amended articles or certificates of incorporation, of matters fundamental and working a material change in the nature and purpose of the corporation, must be drawn, signed, acknowledged or certified, and filed as required by the law. Fishback v. Fond du Lac, supra; Boca & Royalton R. Co. v. S. V. R. Co., 2 Cal. App. 546, 554, 84 Pac. 298; State v. Nor. Pac. Ry. Co., supra; Wood v. Union Gospel Church Asso., 63 Wis. 9, 14, 22 N. W. 756; 1 Thomp. Corp. (2d Ed.) § 202.

The extent of the power of the Legislature to authorize an amendment or alteration of the charter of a corporation as it tended to make "a fundamental change in the charter so as to force minority members to engage in a business entirely different from that into which they entered" was given early consideration in Dartmouth College v. Woodward, supra, and by this court in Bernstein v. Kaplan, 150 Ala. 222, 225, 43 South. 581, where it is said:

"The statute shows an intention to confer almost unlimited power on the corporation (acting by a majority of its stockholders). It may change the entire nature of the business, and, specifically, may 'change the location of its principal office in this state,' and then may 'make such other amendment, alteration or change of its charter as may be desired.'"

[11] The Constitution of 1901 contains a general reservation that the charter of any corporation shall be subject to amendment, alteration, or repeal under general laws (section 229), and the Legislature by providing general laws on the immediate subject, ex-

ecuted "this mandate" of the Constitution. K. C. M. & B. R. R. Co. v. Stiles, Judge, 182 Ala. 138, 141, 142 (2), 62 South. 734. The instant corporation having been formed after the adoption of the Constitution of 1901, the reserved power of "amendment, alteration or repeal" of the charter of corporations, given expression by the general laws so made and provided for such purpose or end, entered into and became a part of the stockholders' contract evidenced by the original charter of the Winona Coal Company. Henley v. Myers, 215 U. S. 373, 30 Sup. Ct. 148, 54 L. Ed. 240; Nat. Surety Co. v. Architectural Decorating Co., 226 U. S. 276, 33 Sup. Ct. 17, 57 L. Ed. 221, 226. Of this it was declared in Avondale Land Co. v. Shook, 170 Ala. 379, 384, 385, 54 South. 268, that—

"Since the decision of the case of Trustees of Dartmouth College v. Woodward, 4 Wheat. 518, 4 L. Ed. 629, it has been fully recognized in this country that the charter of a private corporation is a contract within the meaning of and under the protection of that clause in the Constitution of the United States which provides that 'no state shall * * * pass any * * * law impairing the obligations of contracts.' Section 10, art. 1, Const. U. S. But 'the charter of a corporation having a capital stock is a contract between three parties, and forms the basis of three distinct contracts. The charter is a contract between the state and the corporation; second, it is a contract between the corporation and the stockholders; third. it is a contract between the stockholders and the state.' Cook on Corporations (6th Ed.) § 492. The charter is under the protection of said clause of the federal Constitution in all three of its aspects as a contract.

"Such being the case, many, if not all, of the different states of the Union have protected themselves, as far as they thought necessary, from the effects of this provision in the federal Constitution, by reserving in their Constitutions certain powers of altering, revoking, and amending the charters of private corporations thereafter to be organized under the general laws of such states or chartered by special act of the Legislatures of such states, so that such reserved power would enter into and form a part of the charter contract. This was done in the Constitution of 1875 of this state." Const. 1875, § 1, art. 14.

The general power of amendment, alteration, and repeal in the Constitution of 1901 is broader than that contained in the Constitution of 1875. Though there was division in the decision in Avondale Land Co. v. Shook, supra, no such division existed on the question of the reserved power in the Constitution "to alter, amend or revoke the charters of same" as "applies to all corporations organized under the laws of this state subsequent to the adoption of" said provision of the Constitution. The power to amend being written into the charter (the nature of the business of the corporation is not fundamentally changed, and no fraud is perpetrated on the minority stockholders in the change

of basis for the reissue of stock), courts of equity will not interfere to prevent the two-thirds majority of stockholders from controlling the basis of the issue of stock within the provisions of organic and statutory law, and within the amendment to its charter changing the denominations of the shares, the same being in exact proportion to the interest of each shareholder in the corporation. 14 C. J. pp. 190, 191; Henley v. Myers. supra; Nat. Sur. Co. v. Architectural. Dec. Co., supra; Pittsburgh Steel Co. v. Baltimore Eq. Soc., 226 U. S. 455, 33 Sup. Ct. 167, 57 L. Ed. 297. The instant certificate of amendment to the charter of respondent corporation being to the effect that the holders of its common stock of the par value of $100 will receive a like number of shares that will have the same voting powers as the original shares held by such stockholders, and participate in the assets of the corporation and in distribution thereof on the same basis as before the change to "nonpar stock—without nominal or par value," expressed in its face. The change being duly adopted by a vote of two-thirds in value of the outstanding stock does not violate a constitutional or statutory right of complainant or other nonassenting stockholder; and we need not consider whether such nonassenting stockholder did not attend or take part in the stockholders' meeting voting for and authorizing such change in its charter, or had done no act estopping him to challenge this action of such majority of stockholders.

Did the fact that the charter was amended and the action taken thereon was at one and the same meeting of the stockholders validate the action so taken and the consent so given by the stockholders under the amendment, before the charter as so amended and "certified by the president or secretary of the corporation, under the corporate seal," was "filed * * * in the office of the judge of probate of the county in which the corporation was organized"? The stockholders' meeting being for the double purpose of amending the charter and acting thereunder, and having taken place on March 11th, the certificate of amendment to the charter had not been filed in the probate office and that of the secretary of state when the bill was filed on May 16, 1921. The statute expressly states that the amendment duly adopted and certified by the president or secretary of the corporation, under the corporate seal, must be filed and recorded in the office of the probate judge of the county in which the corporation was organized; and upon the filing of the same the certificate of incorporation shall be deemed to be so amended or the corporate existence so renewed or extended; provided, "that such certificate of change, alteration, amendment, renewal, or extension * * * contain only such provisions as would be lawful and proper to in-

sert in an original certificate of incorporation, made at the time of making such amendment." Acts 1920, p. 136.

[12] This is the law of substantial compliance required of the time and place of filing to make effective the authorized amendment; and only when this condition precedent to the amendment, alteration, or change of the charter or articles of incorporation has been substantially complied with is the change effective. The fact that the grant of the amendment and action thereunder were at one meeting of stockholders is immaterial, if the statutory requirement had been substantially discharged by lodging the amendment, duly certified, in the office of the judge of probate before action was taken thereunder. Not before a substantial compliance of the statute may the corporation act in a fundamental matter. Acts 1920, p. 136; Acts 1919, p. 698; Floyd v. State ex rel. Baker, supra; Code, § 3448. Literal filing of the papers of incorporation, original or amendatory, is necessary to effectuate or to change corporate existence, because it is so written in the law. 7 R. C. L. p. 56; Jackson v. Crown Point Min. Co., 21 Utah, 1, 59 Pac. 238, 81 Am. St. Rep. 651; Mokelumne Hill Min. Co. v. Woodbury, 14 Cal. 424, 427, 73 Am. Dec. 658; Childs v. Hurd, 32 W. Va. 66, 99, 9 S. E. 362; Doyle v. Mizner, 42 Mich. 332, 336, 3 N. W. 968; Garnett v. Richardson, 35 Ark. 144; Indianapolis F. & M. Co. v. Herkimer, 46 Ind. 142; First Nat. Bank v. Davies, 43 Iowa, 424; Abbott v. Omaha, etc., Co., 4 Neb. 416; Vanneman v. Young, 52 N. J. Law, 403, 20 Atl. 53; People v. Montecito Water Co., 97 Cal. 276, 32 Pac. 236, 33 Am. St. Rep. 176, 177, 179. That is to say, it is established that the right to exercise the power to amend a corporate charter and the validity of such amendment are to be determined largely on whether or not such amendment was fundamental or otherwise. (1) If fundamental, a substantial compliance with the statutory requirements is necessary; (2) if not fundamental, but is in respect to the modus operandi merely—a mere change of the instrumentality and agency—then formalities merely directory are not required. Jackson v. Crown Point Min. Co., supra; Buffalo, etc., Co. v. Carey, 26 N. Y. 75, 77; Mead v. Keeler, 24 Barb. (N. Y.) 20, 25; Stone v. Great West. Oil Co., 41 Ill. 85, 93; Humphreys v. Mooney, 5 Colo. 282, 284; Spring Valley W. W. v. San Francisco, 22 Cal. 434; Mokelumne Hill Min. Co. v. Woodbury, supra; 1 Thomp. Corp. (2d Ed.) § 202.

[13] The proposed amendment to the charter of the Winona Coal Company, a corporation, is fundamental. It sought to authorize (a) a change in the nature and character of the stock formerly issued and that to be issued; (b) a change in the par value of shares of stock from $100 per share to common stock without nominal or par value; and (c) an increase of its capital stock from 100 shares of common stock of the par value of $100 per share to 11,000 shares without nominal or par value, 10,000 shares of which would be common stock without nominal or par value and 1,000 shares would be preferred stock without nominal or par value. The corporation may not act until there is a substantial compliance with the statute, by the required certificate of the charter change or amendment being first duly filed as required by law. Not until then had its stockholders the authority of law to make the fundamental change in its organic structure or conditions of life. When the certified amendment is duly filed as required by law, the stockholders are authorized to exercise the discretion to grant or refuse the enlarged power sought.

It follows that there was no error in the decree of the lower court in holding that the statutes under which the respondent corporation was seeking to amend its charter and to convert, issue, and sell common and preferred shares of stock and in accordance with that amendment are in all respects valid and constitutional, and that the corporation was acting with a due regard to the statute governing such cases in adopting the resolution of amendment made an exhibit to complainant's bill, and has the right to certify and duly file the same.

The decree of the circuit court in equity is affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.