## Lewis, Secretary of State, v. Oscar C. Wright Company.

(Decided June 17, 1930.)

J. W. CAMMACK, Attorney General, and M. B. HOLIFIELD, Assistant Attorney General, for appellant.

FRANK M. DRAKE for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

The stockholders of the Oscar C. Wright Company, a corporation, adopted the following amendment to its articles of incorporation:

"Fourth. The total authorized capital stock of this corporation shall consist of twenty thousand (20,000) shares of common stock without any nominal par value, and seventy-five hundred (7,500) shares of Class 'A' common stock (issued upon the conditions heretofore authorized) without any nominal par value; and the proceeds of any future sales of said common stock may be allocated by the Board of Directors either to capital account or to surplus account, on such basis as may be expressly provided for in the agreement by which the original holder of said stock purchases same, not exceeding the allocation of fifty per cent. of said proceeds to surplus."

This is a proceeding under the Declaratory Judgment Act to determine whether the board of directors may allocate a portion of the proceeds of sale of no-par stock to capital, and a portion to surplus, and whether the secretary of state may permit the amendment to be filed. The court below answered the question in the affirmative, and the secretary of state appeals.

At the outset we are met by the suggestion that section 193 of the Constitution does not authorize the issuance of no-par stock. That section is as follows:

"No corporation shall issue stocks or bonds except for an equivalent in money paid or labor done, or property actually received and applied to the purposes for which such corporation was created, and neither labor nor property shall be received in payment of stocks or bonds at a greater value than the market price at the time such labor was done or property delivered, and all fictitious increase of stock or indebtedness shall be void." The foregoing section is substantially the same as section 234 of the Constitution of Alabama. In the case of Randle v. Winona Coal Co., 206 Ala. 254, 89 So. 790, 19 A. L. R. 118, the precise question was presented, and the Supreme Court of Alabama in a well-considered opinion held that permitting shares of corporate stock to be changed from a stated to a non-par value did not violate a constitutional provision that stock shall be issued only for money, labor done, or property actually received. The reasoning of that opinion appears to be sound. Neither the Constitution of that state, nor our Constitution, provides in terms or by implication that only par stock shall be issued. All that either contemplates is that, whenever stock is sold, the corporation shall receive its equivalent in money, labor, or property, and this may be done whether the par value of the stock be indicated in the certificate or the stock be issued without par value.

Authority for issuing stock without par value is conferred by section 564-2, Kentucky Statutes. Among other things, it provides: "Such stock may be issued by the corporation from time to time for such consideration as may be fixed from time to time by the board of directors thereof."

The point is made that the act does not expressly authorize the allocation of stock proceeds to capital and surplus. As pointed out in brief, our corporation laws do not expressly provide for the sale of par stock at a price above par so as to create a paid-in surplus; yet that practice has been indulged in for many years, and has been recognized as a proper and safe method of financing a corporation. Where a certain amount of money is needed to meet the requirements of a corporation, it is immaterial whether it take the form of strict capital or paid-in surplus. Though the purchaser pays more for his stock in order to create a surplus, the amount of stock is necessarily less. His stock merely represents his interest in the property of the corporation and it is

no cause of complaint that the property is in the form of surplus instead of capital. The situation is the same with respect to a creditor of the corporation. All its assets are subject to his claims, and, so long as they are available for that purpose, the name by which they are called is of no concern to him. In the circumstances there is nothing in the proposed plan that is detrimental to the corporation, its stockholders and creditors, or to the public in general. We are therefore constrained to agree with the conclusion reached by Professor Carl B. Robbins that "a corporation which has true no-par shares may accumulate a paid-in surplus by expressing an intent in the subscription contract to designate a definite proportion of the subscribed value as stated capital and the remainder as paid-in surplus." "No-Par Stock," pp. 24-27.

Judgment affirmed.