# Bernstein, *et al. v.* Kaplan, *et al.*

### *Bill to Restrain Corporation from Altering or Changing Its Principal Place of Business.*

(Decided April 16, 1907.   43 So. Rep. 581.)

1.  *Corporations; General Law; Place of Business; Construction.*—
    The term, "prinicipal office" as used in the general act under
    which the corporation was organized, and which granted pow-
    er to change the location of its principal office, includes
    "principal place of business" and authorizes such corporation
    to change its place of business from one place to another.
2.  *Same.*—It appearing that all the stockholders and the board of
    directors were present at the stockholders' meeting, and a
    majority of those present voted for the resolution, which
    provided for a special meeting of the stockholders "to be held
    for the purpose of acting upon the proposition to change the
    location of its principal office and to make such amendments
    to its charter as may be deemed necessary," and the calling
    of the meeting for that purpose, indicating their approval
    thereof, such resolution is in substantial compliance with the
    statute which provides that in calling a stockholders' meet-
    ing to consider making a change in the charter "the board
    of directors shall pass a resolution declaring that such
    change or alteration or extension is desirable and calling a
    meeting (General Acts 1903. p. 336).
3.  *Same; Constitutional Provision.*—Since the powers conferred on
    the corporation itself enters into the contract of subscrip-
    tion to stock section 238 of the Constitution of 1901 has no
    reference to powers conferred on the corporation itself.

APPEAL from Anniston City Court.

Heard before the Hon. THOMAS W. COLEMAN, JR.

Bill by L. H. Kaplan and others against J. Bernstein
and others.  From a judgment for plaintiffs, defendants
appeal.  Reversed and rendered.

This was a bill filed by minority stockholders to pre-
vent the majority stockholders from changing the origi-
nal articles of incorporation, so as to make the princi-

pal place of business of said corporation Birmingham, instead of Anniston, and for an injunction to restrain the removal of said business from Anniston to Birmingham, as contemplated by resolution passed by the stockholders of said corporation by a vote of the majority stockholders and against the wishes of the minority. Motion was made to dismiss the bill for want of equity and to dissolve the injunction which had been granted by the court. The motion was overruled and the injunction retained, and from this judgment of the court this appeal is prosecuted.

LAPSLEY & ARNOLD, for appellant.—The only question presented on this appeal is whether a corporation can change the location of its principal place of business within the state of its incorporation.—General Acts 1903, p. 336. Injunction should have been dissolved because there is no equity in the bill.—*Commonwealth v. Cullen,* 53 Am. Dec. 462.

BLACKWELL & AGEE, for appellee.—There is a difference in the act between "principal office" and "principal place of business." Without specific authority in the Constitution a material amendment in the character of the corporation without the assent of all the stockholders would be unauthorized and void.—*Dartmouth College v. Woodward,* 4 Wheaton 519. A dissenting stockholder cannot be impelled to engage in a new and different undertaking without imparing the obligation of the contract between the stockholder and with the state. —24 N. J. Eq. 455; 41 N. J. Eq. 453; 9 N. J. Eq. 401; 13 S. W. Rep. 337; 15 Ky. L. Rep. 25

SIMPSON, J.—This is an appeal from a decree overruling a motion to dismiss the bill for want of equity and a motion to dissolve the injunction. The original bill was filed by the appellees, who are minority stockholders in the Kaplan Mercantile Company, a corporation organized under the laws of Alabama on September 25, 1905; the object of the bill being to restrain the respondents (appellants) from altering or amending the

charter of the corporation, "so as to authorize a change of the location of the principal office of said company, and to prevent the removal of the principal office and place of business of said company from said city of Anniston." There can be no controversy about the general proposition that, while one who becomes a stockholder in a corporation submits himself to be governed by the action of a majority of the stockholders, yet there are limits to the power of the majority of the stockholders to bind the minority. They can bind them in all matters within the power of the corporation, but they cannot make such changes in the corporation as to divert it entirely from the purposes for which it was organized. This would, in effect, be changing the contract entered into by the stockholders at the organization, and forcing the dissenting ones to engage in a different business from that which they agreed to engage in. On this general principle, if a corporation is organized to engage in and carry on a certain business in a particular place, it would not be within the power of the majority to discontinue that business, and move the office and business of the corporation to another place, and there continue the business. It is another principle equally well settled that, when a corporation is organized under a general statute, the powers conferred by said statute are read into its charter, and those powers may be exercised by the vote of a majority of the stockholders. So the only question to be decided is whether, taking into consideration the purposes of the corporation, as set out in its charter, in connection with the act under which it was created, the right to move its office and business from Anniston to Birmingham is conferred.

In its charter the object of the corporation is stated to be "to engage in a general mercantile business, both at wholesale and retail, and in the manufacturing of any kind of articles which may be deemed proper, and to deal in real estate and lend money, and such other business as may be deemed profitable"; and it is stated that "the location of its principal office and place of business shall be deemed in the city of Anniston, state of Alabama." The general act under which said corporation was orga-

nized mentions, among the powers granted, that it "may change the nature of its business, change its name, change the par value of the shares of its stock, change the location of its principal office in this state, renew or extend its corporate existence, and make such other amendment, alteration or change of its charter, as may be desired."—Gen. Acts 1903, p. 336, § 47. There has been some conflict in the decisions as to how far the Legislature may go, in altering or amending a charter, under a general power to alter and amend; but it seems probable that the better view is that those general terms were not intended to authorize a fundamental change in the charter, so as to force minority members to engage in a business entirely different from that into which they had entered.—3 Clark & Marshall on Corporations, pp. 1926-1932, § 631f. The reasoning of these cases is that the reservation by those general words was merely intended to guard against the principle of contractual rights established by the *Dartmouth College Case,* and that any fundamental alteration would be a "change."— 3 Clark & Marshall on Corporations, p. 1932, § 631f· *Zabriskie v. Hackensack, etc., R. R.,* 18 N. J. Eq. 178, 90 Am. Dec. 617, 623; 10 Cyc. 212, 213. The statute shows an intention to confer almost unlimited power on the corporation (acting by a majority of its stockholders). It may change the entire nature of the business, and, specifically, may "change the location of its principal office in this state," and then may "make such other amendment, alteration or change of its charter as may be desired."

Appellees claim that the authority to change the principal office, specifically given in the statute, does not include the power to change its principal place of business. The statute does not require the certificate of incorporation to state where the principal business shall be carried on, but only "the location of its principal office." An office is "the place where a particular kind of business, or service for others, is transacted." Webster's International Dictionary. It seems that the statute makers either did not consider the prin-

15 R

cipal place of business as one of the fundamentals, or they intended the word "office" to cover both. We think the latter is the true interpretation; and in the other section, where the registration is required to be made in the office of the judge of probate in the county where the principal place of business is established, that is but another designation for the principal office. It will be noticed that, in the clause describing the business to be engaged in, it simply mentions the different lines of business, and does not state where either is to be carried on, but only, in another clause, that its principal office and place of business "shall be deemed in the city of Anniston." In addition to all this, we think the concluding clause is broad enough to include the place of business.

It is next insisted that the proceedings calling the stockholders' meeting did not conform to the statute, in that the statute provides that the "board of directors shall pass a resolution, declaring that such change or alteration or extension is desirable and calling a meeting," and in this case the resolution of the directors did not declare that such change was advisable, but merely provided for a special meeting of the stockholders "to be held for the purpose of acting upon a proposition to change the location of its principal office and to make such amendments to its charter as may be deemed necessary." While it is true that the resolution of the board of directors does not literally correspond with the language of the act, yet inasmuch as the board of directors and all other stockholders were present at the meeting of stock holders, and a majority of the board there voted for the resolution, and inasmuch as the calling of the meeting for that purpose indicated their approval, we hold that there was a substantial compliance with the statute. Section 238 of the Constitution refers merely to the power of the Legislature to alter, amend, or revoke charters of corporations which had been created before said act, and has no reference to the powers conferred on the corporation itself, which entered into the contract of the subscriber to stock.

[Graybill, et al. v. Drennen, et al.]

The decree of the court is reversed, and a judgment will be here rendered dissolving the injunction and dismissing the bill.

TYSON, C. J., and HARALSON and DENSON, JJ., concur.