124 So.2d 812

**MOBILE PRESS REGISTER, INC., et al.**

v.

**Joseph F. McGOWIN, II, Individually and as Executor and Trustee under the last Will and Testament of Everette Leonard McGowin et al.**

**I Div. 680.**

Supreme Court of Alabama.

Nov. 17, 1960.

C. B. Arendall, Jr., Hand, Arendall & Bedsole, Mobile, for appellants.

416

Francis H. Inge, Inge & Twitty, Mobile, for appellees.

GOODWYN, Justice.

This case was originally assigned to another Justice. It was reassigned to the writer on February 8, 1960, for study and preparation of an opinion.

The question in this case concerns the preemptive rights of stockholders in a private corporation to subscribe to proportionate parts of a proposed new issue of stock in the corporation.

The complainants below, appellees here, own stock in The Mobile Press Register, Inc. The directors of said corporation adopted a resolution proposing to the stockholders that article 4 of the corporation's charter be amended so as to provide for an eight for one split of the corporation's 14,500 shares of no par value common stock, changing the new stock from a no par value to a par value of $4 per share, and authorizing a new issue of 6,650 shares of the $4 par value stock. As to the new issue, the proposed amendment provides as follows:

"(c). An additional 6,650 shares of said common stock having a par value of $4.00 per share is hereby authorized, so that the total number of shares which the corporation will henceforth be authorized to have oustanding, including the 116,000 shares referred to in sub-paragraph (a) hereof, shall be 122,650 shares. Each of said 122,650 shares of common stock shall have a par value of $4.00 per share and each shall have full voting rights and powers.

"(d). With respect only to said 6,650 additional shares: The stockholders of this corporation shall not have any preemptive right to subscribe to the issue of said shares, or any portion thereof. Said shares, or such portion thereof as the Board of Directors may determine, may be issued by such Board, from time to time, to such executive employee or employees of this corporation as said Board may select, for a consideration equal to the book value of the share or shares being issued at the close of this corporation's fiscal year next preceding the time of such issuance, or, at the option of such Board, for a consideration equal to the book value of the share or shares being issued at the close of this corporation's fiscal year within which such issuance is effected. In connection with any such issuance of any such shares said Board shall provide for the repurchase and recapture of such stock by this corporation in the event the executive employee to whom the same is issued shall desire to sell or in the event such executive's employment by this corporation shall be terminated, for a consideration equal to the book value of the share or shares being recaptured by this corporation at the close of this corporation's fiscal year next preceding the time of such recapture, or, at the option of such Board, for a consideration equal to the book value of the share or shares being recaptured at the close of this corporation's fiscal year within which such recapture is effected. Upon such recapture of any of said shares by this corporation, the same shall remain available for subsequent resale by such

Board to executive employees in the same manner and on the same terms and conditions as is herein set forth with respect to the original issuance of such shares. In each instance, of the issuance, recapture or resale of any of said shares, the book value thereof, from time to time, shall be determined by such certified public accountant as said Board may designate."

Appellees, for themselves and others similarly situated, filed a bill in the circuit court of Mobile County, in equity, against appellants (Ralph B. Chandler, William J. Hearin and Arthur C. Tonsmeire, Jr., individually and as directors of The Mobile Press Register, Inc., and as proxy holders of various stockholders of The Mobile Press Register, Inc., and George M. Cox) seeking the following relief:

"* * * [T]he Complainants respectfully pray that, upon the filing of this Bill, your Honors will be pleased to grant to them a Temporary Writ of Injunction restraining the Respondents and each of them, their attorneys, agents and proxies or other representatives, from voting in favor of and from adopting at said meeting to be held on October 7, 1955, that portion of the resolution hereinabove set out which would have the effect purportedly of depriving them of their preemptive rights to subscribe respectively for their proportionate part of said 6650 shares of stock, from issuing all or any part of said 6650 shares of stock, or disposing of any part thereof by gift, sale or otherwise without first giving to these Complainants a full opportunity to subscribe and pay for their respective proportionate shares of the same; and that on the final hearing hereof your Honors will be pleased to enter a Decree ordering, adjudging and decreeing that each Complainant herein is vested with and possessed of preemptive rights to subscribe for his respective proportionate part of said addition 1 stock amounting to 6650 shares, and that your

Honors will enter a Declaratory Judgment and Decree declaring the rights, statutes [sic] and other legal relations of the Complainants, respectively, and the Respondents, and in particular, without limitation, their rights as to preemptive rights to subscribe for and purchase their proportionate parts of said stock issue, as well as the stock issue of 354 shares which were sold, illegally, to Hearin and Cox; and that your Honors will make said Temporary Writ of Injunction permanent upon such final decree; further, that upon a final hearing, your Honors will make and enter a decree cancelling and annulling the sale of 354 shares of stock to Hearin and Cox; ordering them to return said stock to the corporation, and ordering the corporation to return to them the consideration which they paid therefor, to the end that should such shares again be sold, they be offered first to stockholders having preemptive rights to purchase the same. * * *"

The trial court granted the temporary injunction as prayed for and also, after the cause was submitted for final decree on the pleadings and a stipulation of the parties, granted a permanent injunction with respect to the 6,650 shares; the decree providing, in pertinent part, as follows:

*"III*

"The Complainants, respectively, and all others similarly situated, by virtue of the stock which they own, respectively, of the respondent corporation, and as an incident inherent in such stock ownership, and incident to an increase of stock, each possesses as a vested *property right,* the pre-emptive right to subscribe for and acquire their respective proportionate parts of the proposed new and increased issue of 6650 shares of common stock of respondent corporation, to the end that they be given the opportunity to keep their respective proportionate control

and voting power with respect to the respondent corporation, and to the end that their equities in the surplus of the corporation be preserved in the same proportion as they now exist. The amendment to the Charter of the respondent corporation as proposed can not validly bind the complainants nor any other stockholders, who are similarly situated, and who have not consented thereto.

## "IV

"The Court declares and decrees that the proposed Charter amendment as more particularly described and set forth in the Complainants' Bill of Complaint, and in Respondents' Answer, if adopted and filed in the Probate Court of Mobile County, Alabama, insofar as it relates to depriving these Complainants and others similarly situated of their rights, respectively, as stockholders, to subscribe for their proportionate parts of the proposed new issue of stock, viz: 6650 shares of common stock, is and will be void as to the Complainants and others similarly situated.

## "V

"The Respondent, The Mobile Press Register, Inc., its officers, Directors, agents or other representatives, be and they are hereby permanently enjoined from issuing and selling the proposed 6650 shares of common stock of respondent corporation, or any part thereof, without first giving to and affording the Complainants, and all others similarly situated, an opportunity to subscribe and pay for their respective proportionate parts of such proposed new issue of stock in proportion to their holdings, and on such terms and conditions as the respondent corporation, its officers and Directors, may lawfully impose, and not less favorable than those on which said stock may be offered to others."

The respondents bring this appeal from that decree.

The material facts, in addition to those already recited, may be stated as follows:

The Mobile Press Register, Inc., was incorporated under the laws of Alabama on February 15, 1932, under the name of The Mobile Daily Newspapers, Inc. It received its present name by amendment of its charter on August 11, 1948.

At the time this suit was commenced it had a total authorized capital stock of 14,500 shares of common stock all without nominal or par value, and all with full voting rights and powers. (Included in this total are the 354 shares, referred to above, which were sold to two executives of the corporation—Hearin and Cox—pursuant to an amendment of article 4 of the corporation's charter on June 15, 1954, providing "that the stockholders shall not have any pre-emptive right to subscribe to the issue of any of the 354 shares of said stock which have not been sold prior to the adoption of this amendment, and said 354 shares may be issued by the Board of Directors of said corporation from time to time after the adoption of this amendment to such executive employee or employees of said corporation as said Board of Directors may select." The bill also seeks to have the sale of said stock cancelled and annulled and the stock returned to the corporation "to the end that should such shares again be sold, they be offered first to the stockholders having preemptive rights to purchase same." This relief was denied, the decree reciting that "the claim and cause of action with respect" to said stock "are barred by the provisions of Section 47 of Title 10 of the Code of Alabama of 1940." There is no cross-assignment of error questioning this holding.)

On August 26, 1955, the Board of Directors unanimously adopted the resolution above referred to proposing an eight for one

splitting of the stock, changing the stock after splitting from no par value to a par value, and authorizing a new issue of 6,650 shares of stock.

It was stipulated that neither the original certificate of incorporation nor any amendment thereto prior to the amendment of June 15, 1954, contained any provision expressly referring to the stockholders' preemptive rights.

It was further stipulated, in part, as follows:

"3. A special meeting of the stockholders of The Mobile Press Register, Inc., was called by the directors for October 7, 1955, at the offices of the corporation in Mobile, Alabama, at the hour of 11:00 A.M. If a temporary restraining order had not been issued in this proceeding, there would have been voted, at such meeting, in favor of a proposed amendment to the first paragraph of Article 4 of the certificate of incorporation of The Mobile Press Register, Inc., which proposed amendment is hereinafter more fully identified, at least sixty-seven percent. (67%) of the total outstanding capital stock of said corporation. * * *

\* \* \* \* \* \*

"8. * * *

"If the temporary restraining order issued in this proceeding had not prohibited such action, the proposed amendment to the certificate of incorporation would have been adopted at such special stockholders meeting on October 7, 1955, and would have been filed immediately thereafter in the Probate Court of Mobile County, Alabama, and the directors of said corporation would then have taken action, pursuant to such amendment, to issue and sell all of said 6,650 shares of stock referred to in the proposed

amendment, constituting 5.4% of the total stock of the corporation, to the following executives of the corporation, in the following respective amounts:

| Name | Title | Number of Shares |
|------|-------|------------------|
| W. J. Hearin, Jr. | Executive Vice President and General Manager | 3,000 |
| G. M. Cox | Executive Editor | 700 |
| T. C. McLemore | Production Superintendent | 300 |
| John Winter | Local Advertising Manager | 700 |
| P. D. Beville | National Advertising Manager | 200 |
| Burt Schwarz | Classified Advertising Manager | 350 |
| Frank Barter | Circulation Director | 650 |
| W. M. Curran | Auditor-Cashier | 300 |
| Alvin A. Johnson | Comptroller | 450 |
| Total | | 6,650 |

"Contracts would have been made with each of said executives providing for the repurchase and recapture of such shares under the circumstances and in the manner set forth in such proposed charter amendment; and the stock certificates representing such shares would have contained provisions making the same subject to such repurchase and recapture. Each of said named executives is and has been since prior to January 1, 1954, considered by management to be a valued employee of the corporation, has devoted many years to the service of the corporation (the average length of such executives' services to the corporation being 18 years), is charged with the responsibilities of their respective offices in the management of the affairs of the corporation, and management considers and has considered since prior to January 1, 1954, that each of them would be extremely hard to replace if he should sever his connection with the corporation. Each of the named executives is paid substantial compensation for his services; the operations of the corporation have been and are quite profitable; and the corporation is well

able to pay the said executives quite liberally for any services they may perform for the company. The directors of the corporation believe that such amendment and such issuance of said 6,650 shares is in the best interests of the corporation; and the complainants believe to the contrary.

"9. Each complainant is desirous of acquiring and subscribing for his or her proportionate part of the proposed new issue of said 6,650 additional shares, if the stockholders of said corporation have or would have pre-emptive rights with respect to such shares, and each complainant is ready, able and willing to subscribe for and pay for the same in cash, and each of said stockholders would have been denied the right to do so, by the management of the corporation, if said temporary injunction had not been issued.

"10. The issuance of said 6,650 shares to said executives named above would reduce the proportionate interest of the complainants, respectively, in The Mobile Press Register, Inc., as follows: Joseph F. McGowin, II, and Joyce S. McGowin, as executors and trustees under the last will and testament of Everett Leonard McGowin, own 15.8005% of the stock of said corporation, and after the issuance of such additional 6,650 shares they would own 14.9439% thereof. Complainant Thomas E. Twitty now owns 1.3672% of such total stock, and after the issuance of said additional shares would own 1.293% thereof. The Estate of Ruth McGowin Aldridge now owns 14.3108% of such total stock, and after the issuance of said additional shares would own 13.5350% thereof.

\* \* \* \* \* \*

"12. Before the filing of the bill of complaint in this cause, the complainants, through their representatives, advised the respondents Chandler and Hearin of their objections to the proposed new issuance of said 6,650 shares without the complainants being allowed to acquire their proportionate part thereof on the same terms as others, and of their desire to acquire such part thereof as they would be entitled to acquire if, as they contend, they would have pre-emptive rights with respect to such shares, on the issuance thereof. \* \* \*"

The position taken by appellants is that "the legislature of Alabama has expressly authorized exactly what the respondents and the majority stockholders proposed to do, by Section 18 of Title 10 [as amended by Act No. 289, appvd. July 26, 1951, Acts 1951, p. 573] and by the Act of July 26, 1951 [Act No. 289, supra] (amending Section 2 of Title 10)"; that "such statutes are valid exercises of the reserved powers of the legislature as contained in Section 229 of the Constitution of 1901." It is also argued that if they are not correct in this contention, still the decree should be reversed because "the doctrine of pre-emptive rights contains an exception applicable to the proposed charter amendment, which exception is customarily called the 'services exception'"; that "under this exception a corporation may issue stock to its executives without offering the same to all stockholders." In view of our conclusion that appellants' first insistence is meritorious, there is no need to discuss the second.

In their brief, appellants make this statement:

"\* \* \* To narrow the area of dispute between the appellants and the appellees, we state at the outset that we concede that the doctrine of pre-emptive rights is part of the common law of Alabama and that when The Mobile Press Register, Inc., was incorporated on February 15, 1932, the stockholders acquired such preemptive rights."

The general rule is that "in the absence of statutory restriction or restrictions in the charter of a corporation, if the capital stock of a corporation is increased and new

shares of stock are issued, a holder of original stock is entitled to subscribe to the new issue in preference to nonholders and on equal terms with other holders of the original stock in the proportion that the number of the original shares held by him bear to the total outstanding number of the original shares." 13 Am.Jur., Corporations, § 186, p. 309. See, also, 18 C.J.S. Corporations § 201b, p. 631; Annotations, 138 A. L.R. 527 and 52 A.L.R. 221.

We find no such statutory restriction now or formerly existing in this state; nor is there now, nor has there been, any such restriction in the corporation's charter, except with respect to the 354 shares referred to above. So that, unless there is valid statutory authority for amending the corporation's charter as proposed, which is applicable to the complaining stockholders, such preemptive rights as they have still stand and cannot be cut off. Thus, two questions are presented: First, is there statutory authority for amending the corporation's charter so as to restrict or cut off the complaining stockholders' preemptive rights with respect to the proposed new issue of stock? Second, if there is such statutory authority, is it constitutional when applied to the preemptive rights of the complaining stockholders in this case?

I.

When the corporation was organized in 1932 the statutory authority for amending its charter was § 6982, Code 1923, providing as follows:

"§ 6982 (3462) Changes or amendment of charter and scope of business; how effected.—Every corporation chartered under this chapter or under any general or special law of this state may change the nature of its business, the par value of the shares of its stock, change the location of its principal office in this state, renew or extend its corporate existence, change its corporate name, and *make such other amendment, alteration, or change of its charter as may be desired* in the following

manner: The board of directors shall pass a resolution declaring that such change or alteration or extension is desirable and calling a meeting of the stockholders to take action thereon; if the holders of the larger amount in value of each class of stockholders having voting powers shall vote in favor of such alteration, change, amendment, or renewal, or extension, a report thereof, certified by the president or secretary of the corporation, under the corporate seal, must be filed and recorded in the office of the judge of probate of the county in which the corporation was organized, and upon the filing of the same the certificate of incorporation shall be deemed to be so amended, or the corporate existence so renewed or extended; *but such certificate of change, alteration, amendment, renewal, or extension, shall contain only such provisions as would be lawful and proper to insert in an original certificate of incorporation, made at the time of making such amendment."* [Emphasis supplied]

Section 6982 was carried, without change, into the 1940 Code as § 18, Tit. 10. Section 18 remained unchanged until amended by Act No. 289, appvd. July 26, 1951 (Acts 1951, Vol. I, pp. 573, 575), supra, providing, in pertinent part, as follows:

"Every corporation chartered under this title or under any general or special law of this state may, from time to time, when and as desired, amend its certificate of incorporation without limitation, by adding to its corporate powers and purposes, or by diminution thereof, or both; or by substitution of other powers and purposes, in whole or in part, for those prescribed by its certificate of incorporation; *or by increasing or decreasing its authorized capital stock or reclassifying the same by changing the number, par value, designations, preferences, privileges, voting powers, and rights of redemption, retirement and conversion and*

*provisions as to security, or relative, participating, optional or other special rights of the shares, or the qualifications, limitations or restrictions of such rights* (except the right to vote shall not be denied as to the creation of bonded indebtedness, the increase of capital stock, the issuance of preferred stock, disposition of the entire property of the corporation, consolidation, merger or dissolution of the corporation), or by changing shares with par value into shares without par value, or shares without par value into shares with par value, either with or without increasing or decreasing the number of shares, or by changing the corporate title of the corporation, the nature of its business, the location of its principal office in this state, or by renewing or extending its corporate existence; or by making any other change or alteration in its certificate of incorporation that may be desired; and any or all such changes or alterations may be effected by one certificate of amendment.

\* \* \* \* \* \*

" \* \* \* Upon the filing of such certificate, the certificate of incorporation shall be deemed to be so amended, *but such certificate of amendment,* alteration, change or renewal or extension, *shall contain only such provisions as would be lawful and proper to insert in an original certificate of incorporation, made at the time of making such amendment."* [Emphasis supplied.]

 Act No. 289, supra, also amended § 2 of Tit. 10, Code 1940, (prescribing the contents of a certificate of incorporation), by adding thereto, among the changes made, the following significant provision:

"(11) The certificate may contain provisions limiting or denying to the stockholders the preemptive right to subscribe to any or all issues of stock of the corporation of any or all classes."

So, it can be seen that, at the time of the proposed issuance of the additional 6,650 shares of stock, there was statutory authority for amending the corporation's charter with respect to the stockholders' preemptive rights in such stock.

(While not applicable to this proceeding, we call attention to the "Alabama Business Corporation Act", approved November 13, 1959, Act No. 414, Acts 1959, Vol. 1, p. 1055, and particularly §§ 4(9), 19, 22, and 42. Section 4(9) is the same as § 2(11), Tit. 10, Code. 1940, as amended in 1951, supra. Section 19 corresponds to § 18, Tit. 10, as amended in 1951, supra, and includes the same provision with respect to the certificate of amendment containing "only such provisions as would be lawful and proper to insert in an original certificate of incorporation, made. at the time of making such amendment." · Sections 22 and 42 are new and provide as follows:

"Sec. 22. Effect of Certificate of Amendment.—No amendment shall affect any existing cause of action in favor of or against such corporation, or any pending suit to which such corporation shall be a party, or the existing rights of persons other than stockholders; and, in the event the corporate name shall be changed by amendment, no suit brought .by or against such corporation under its ·former name shall abate for that reason."

"Sec. 42. Stockholders' Pre-emptive Rights.—Unless otherwise provided in the certificate of incorporation or an amendment thereto, every holder of stock which entitles the holder to vote for the election of directors shall have the pre-emptive right to purchase his proportion of the issuance of any class of stock, including treasury shares, according to the proportion of his holdings of such stock, at such price, which may be in excess of par value, within such time and on such·terms as shall be fixed and determined by the Board of Directors; provided,. however, that nothing herein contained shall prevent

provisions in the certificate of incorporation or an amendment thereof, denying pre-emptive rights to any class of stockholders or granting pre-emptive rights to holders of preferred stock or other stock not having voting power, nor shall anything herein be construed to give pre-emptive rights to holders of preferred stock having the right to elect one or more directors of the corporation only in the event of default in payment of dividend on such preferred stock or other default.")

## II:

This brings us, then, to the second question, viz: Is such statutory authority constitutional when applied to the preemptive rights of the complaining stockholders? In other words, are the preemptive rights of these stockholders, having been acquired prior to passage in 1951 of Act No. 289, supra, (amending §§ 2 and 18, Tit. 10, Code 1940, so as to permit denying of pre-emptive rights by charter amendment), protected by the provisions of the Federal and Alabama Constitutions (Art. 1, § 10, Constitution of the United States; § 22, Alabama Constitution 1901) which forbid the passage of any law "impairing the obligations of contracts"?

To meet the holding in the Dartmouth College Case (Trustees of Dartmouth College v. Woodward, 4 Wheat. 518, 4 L.Ed. 629), Alabama, among other states, has included in its Constitution a reservation of power for amending the charter of a corporation. Section 229, Constitution 1901, contains these provisions:

"The legislature shall pass no special act conferring corporate powers, but it shall pass general laws under which corporations may be organized and corporate powers obtained, subject, nevertheless, to repeal at the will of the legislature; and shall pass general laws under which charters · may be altered or amended. * * * The charter of any corporation shall be subject to amendment, alteration, or repeal under general laws."

(Section 229 was amended by Amendment XXVII, proclaimed ratified on January 2, 1936, so as to exempt building and loan associations from payment of a franchise tax. It was not changed otherwise and the amendment does not affect this case.) See, also, §§ 234 and 238, Constitution 1901.

[3, 4] In determining their contractual rights, the shareholders must look to the charter and by-laws of the corporation, and to statutory and constitutional provisions bearing on such rights. So, in this case, the appellees, in looking at the law, must have been informed by the provision contained in § 229, Constitution 1901, that, by appropriate corporate action under general laws thereafter enacted, their preferential rights to subscribe to new issues of stock could be impaired. The reserved power contained in § 229 is as much a part of the charter and certificates of stock of the corporation as though specifically set forth therein. Hence, when the stock held by appellees was issued the corporation's charter and each certificate of stock contained, as effectually as if actually written therein, the provision from § 229 that the charter of the corporation "shall be subject to amendment, alteration, or repeal under general laws." In legal effect, this power to amend under general laws was consented to by the stockholders when they purchased their stock. Consequently, the exercise of this power by the corporation pursuant to general laws would not impair the obligation of a contract. Any contractual rights the stockholders might have acquired incident to their stock ownership were subject to the condition that such rights could be changed in accordance with general laws thereafter enacted by the legislature. In other words, the stockholders may be said to have been put on notice that changes, such as here proposed, might later be authorized by general laws.

It seems to us that the legislature, in amending §§ 2 and 18 of Tit. 10, Code 1940,

by Act No. 289, supra, effectively complied with the constitutional "mandate" calling for amendment of charters under general laws and, in so doing, constitutionally authorized amendment of the corporation's charter so as to deny to the stockholders their preemptive right to subscribe to the additional stock proposed to be issued. This is consistent with the holding in Randle v. Winona Coal Co., 206 Ala. 254, 261–262, 89 So. 790, 797, 19 A.L.R. 118, from which we quote the following:

"The extent of the power of the Legislature to authorize an amendment or alteration of the charter of a corporation as it tended to make 'a fundamental change in the charter so as to force minority members to engage in a business entirely different from that into which they entered' was given early consideration in Dartmouth College v. Woodward, supra, and by this court in Bernstein v. Kaplan, 150 Ala. 222, 225, 43 South. 581, where it is said:

" 'The statute shows an intention to confer almost unlimited power on the corporation (acting by a majority of its stockholders). It may change the entire nature of the business, and, specifically, may "change the location of its principal office in this state," and then may "make such other amendment, alteration or change of its charter as may be desired." '

"The Constitution of 1901 contains a general reservation that the charter of any corporation shall be subject to amendment, alteration, or repeal under general laws (section 229), and the Legislature by providing general laws on the immediate subject, executed 'this mandate' of the Constitution. K. C. M. & B. R. R. Co. v. Stiles, Judge, 182 Ala. 138, 141, 142(2), 62 South. 734. The instant corporation having been formed after the adoption of the Constitution of 1901, the reserved power of 'amendment, alteration or repeal' of the charter of corporations, given expression by the general laws so made and provided for such purpose or end, entered into and became a part of the stockholders' contract evidenced by the original charter of the Winona Coal Company. Henley v. Myers, 215 U.S. 373, 30 Sup.Ct. 148, 54 L.Ed. 240; Nat. Surety Co. v. Architectural Decorating Co., 226 U.S. 276, 33 Sup.Ct. 17, 57 L. Ed. 221, 226. Of this it was declared in Avondale Land Co. v. Shook, 170 Ala. 379, 384, 385, 54 South. 268, that—

" 'Since the decision of the case of Trustees of Dartmouth College v. Woodward, 4 Wheat. 518, 4 L.Ed. 629, it has been fully recognized in this country that the charter of a private corporation is a contract within the meaning of and under the protection of that clause in the Constitution of the United States which provides that "no state shall * * * pass any * * * law impairing the obligations of contracts." Section 10, art. 1, Const. U. S. But "the charter of a corporation having a capital stock is a contract between three parties, and forms the basis of three distinct contracts. The charter is a contract between the state and the corporation; second, it is a contract between the corporation and the stockholders; third, it is a contract between the stockholders and the state." Cook on Corporations (6th Ed.) § 492. The charter is under the protection of said clause of the federal Constitution in all three of its aspects as a contract.

" 'Such being the case, many, if not all, of the different states of the Union have protected themselves, as far as they thought necessary, from the effects of this provision in the federal Constitution, by reserving in their Constitutions certain powers of altering, revoking, and amending the charters of private corporations thereafter to be organized under the general laws of such states or chartered by special act

of the Legislatures of such states, so that such reserved power would enter into and form a part of the charter contract. This was done in the Constitution of 1875 of this state.' Const. 1875, § 1, art. 14.

"The general power of amendment, alteration, and repeal in the Constitution of 1901 is broader than that contained in the Constitution of 1875. Though there was division in the decision in Avondale Land Co. v. Shook, supra, no such division existed on the question of the reserved power in the Constitution 'to alter, amend or revoke the charters of same' as 'applies to all corporations organized under the laws of this state subsequent to the adoption of' said provision of the Constitution. * * *"

In Avondale Land Co. v. Shook, 170 Ala. 379, 54 So. 268, there was involved the reservation of power to amend contained in §§ 1 and 10, Article XIV, Constitution 1875. Those sections correspond to §§ 229 and 238, respectively, of the 1901 Constitution.

Section 1, Article XIV, Constitution 1875, contained this reservation: "All general laws and special acts passed pursuant to this section may be altered, amended, or repealed." Section 229 contains provisions of similar import (providing for passage of general laws "under which corporations may be organized and corporate powers obtained, subject, nevertheless, to repeal at the will of the legislature; and shall pass general laws under which charters may be altered or amended") and, in addition, as already noted, the following: "The charter of any corporation shall be subject to amendment, alteration, or repeal under general laws." It is obvious, as held in Randle v. Winona Coal Co., supra, that the power of amendment reserved in § 229, Constitution 1901, is broader than that contained in § 1, Art. XIV, Constitution 1875.

■ We are not concerned here with § 238, Constitution 1901. That section "refers merely to the power of the Legislature to alter, amend, or revoke charters of corporations * * *, and has no reference to the powers conferred on the corporation itself, which entered into the contract of the subscriber to stock." Bernstein v. Kaplan, 150 Ala. 222, 226, 43 So. 581, 583.

■ It seems to us that one significant distinction between the reservations in the two Constitutions is this: The power reserved in the 1875 Constitution authorized the state, acting by and through the legislature, to alter, amend, or repeal laws affecting corporations, in contrast to the additional reservation in the 1901 Constitution that "the charter of any corporation shall be subject to amendment, alteration, or repeal under general laws." Thus, the right of the corporation to amend its charter so as to affect the contract relationship between the corporation and its stockholders and the stockholders inter se was not clearly reserved in the 1875 Constitution as we think it is in the 1901 Constitution. (See Official Proceedings, Constitutional Convention 1901, Vol. 4, pp. 4456–4472, for discussion preceding approval of what is now § 229, Constitution 1901.) It does not appear that other state constitutions generally contain provisions as broad as the reservation added at the end of § 229, Constitution 1901.

We have given due consideration to appellees' contention that "a stockholder's preemptive right is a vested property right entitled to the same protection by law as other property rights and may not be taken away by the officers, directors or other stockholders without his consent." But can it be said that such right, when acquired, became "vested", that is, cannot be "destroyed, impaired, or divested" without the consent of the holder of such right (McDonald v. McDonald, 212 Ala. 137, 141, 102 So. 38, 41, 36 A.L.R. 761), in the face of the fact that the corporation's charter and the certificates of stock contained, in legal effect, at the time such right was acquired, the mandatory constitutional prescription that it "shall be subject to amendment, al-

teration, or repeal under general laws"? We think not. This reserved right to amend, in such manner as the legislature may prescribe by general laws, became, as already noted, a part of each stockholder's contract. That is, the preemptive right, when acquired, was acquired subject to the express condition that it could, in effect, be "destroyed, impaired or divested by an amendment of the charter under general laws." There is no suggestion that the legislature exceeded its authority in passing Act No. 289, a general law, except, of course, insofar as it may be applicable to appellees' preemptive rights.

■ Whether the proposed action might run afoul of equity principles, we do not decide. It seems to us that disposition of the case in the trial court was based exclusively on the principle, as insisted upon by appellees, that the complaining stockholders have contractual and vested property rights with respect to the new issue of stock which cannot be impaired or taken away without their consent. Accordingly, under all the circumstances, including consideration of the parties' stipulation of facts and the decree, we think it appropriate to pretermit discussion on this appeal of appellees' argument, made in brief, that the decree should be affirmed on the theory that the proposed action by appellants amounts to a constructive fraud upon the appellees. It seems apparent that the trial court did not consider this in arriving at a decision (assuming that the bill sufficiently charges bad faith and a constructive fraud upon appellees). In fact, it appears that the parties themselves confined the issue for decision to one of classic constitutionality involving the contract and due process clauses—that is, whether the proposed action by appellants was constitutional insofar as it concerns the common law preemptive rights of the objecting stockholders and others similarly situated. We have confined our discussion to that question.

Much has been written concerning the amendment of charters under the reserved power. That the authorities are not in accord is apparent from a reading of the many cases dealing with the problem. As said in Fletcher, Cyclopedia of the Law of Private Corporations, Perm. Ed., Vol. 7, § 3695, pp. 854–856:

"While the state, in its reserved power to do so, may alter and amend the charter, and the corporation itself cannot object, there is some question as to its right to make material or essential alterations in the contract between the corporation and its stockholders and among the stockholders inter se. There are decisions which apparently deny the right, and it has been held that the state cannot reach out and impair the obligations of contracts existing between the corporation and its members, or among the corporators themselves, and that the power of amendment does not authorize the legislature to make a new contract for the stockholders, nor to change the relation between a corporation and its stockholders against their will, though it may grant to the corporation the power to effect changes. In other cases, the power to make amendments changing the contract of the stockholders is recognized,[2] and, in general, the corporate charter may be altered so as to impose greater burdens on the stockholders than were imposed at the time the charter was granted, providing only such alteration does not involve a confiscation of the rights of individuals, deprive them of their property without due process of law or violate the elementary principles of natural justice. * * *"

Among the cases cited in support of Note 2 is Randle v. Winona Coal Co., supra. For other cases see the notes to § 3695, including those in the cumulative supplement. For discussions of the subject in general, see: Annotations, 138 A.L.R. 526, 117 A.L.R. 1290, 111 A.L.R. 1525, 105 A.L.R. 1452, 72 A.L.R. 1252, 62 A.L.R. 573, 52 A.L.R. 220; 13 Am.Jur., Corporations, §§ 186,

421; 69 Harv.L.Rev. 538 ("Limitations on Alteration of Shareholders' Rights by Charter Amendment"); 50 Columbia L.Rev. 900 (Becht, "Corporate Charter Amendments; Issues of Prior Stock and the Alteration of Dividend Rates"); 36 Cornell L.Rev. 1 (Becht, "Changes in the Interests of Classes of Stockholders by Corporate Charter Amendments Reducing Capital, and Altering Redemption, Liquidation and Sinking Fund Provisions"); 14 Notre Dame Lawyer 23 (deFuniak, "Reducing Rate of Dividend on Preferred Stock"); 23 Va.L.Rev. 579 ("Equitable and Constitutional Limitations on the Reserved Power to Amend Corporate Charters"); 34 Mich.L.Rev. 859 ("Corporations—Amendment of Corporate Charters—Power of the Legislature to Authorize Changes in Intracorporate Affairs"); 3 U. of Chicago L.Rev. 327 ("Corporations—Amendment of Charter—Right of Minority Stockholder to Object to Changes in Charter under Statute Subsequent to Incorporation"); 13 Tenn.L.Rev. 62 ("Private Corporations—Charter Amendment Permitting withdrawal of Stockholder"); 21 St. Louis L.Rev. 12 ("Constitutional Limitations Upon Legislative Power to Alter Incidents of the Shareholder's Status in Private Corporation"); 32 Mich.L.Rev. 743 (Curran, "Minority Stockholders and the Amendment of Corporate Charters"); 29 Mich.L.Rev. 432 (Ohlinger, "Some Comments on the Reserved Power to Alter, Amend and Repeal Corporate Charters"); 31 Columbia L.Rev. 1163 ("Power of the State to Alter Corporate Charters"); 43 Harv.L.Rev. 586 (Drinker, "The preemptive Right of Shareholders to Subscribe to New Shares"); 42 Harv.L.Rev. 186 (Morawetz, "The preemptive Right of Shareholders"); 38 Yale L. Journal 563 (Frey, "Shareholders' Pre-emptive Rights").

Appellees have moved for dismissal of the appeal on the ground that the question presented for decision is now moot. This is based on action taken by the corporation, after submission of the case here, splitting the stock as proposed, but without issuing the additional 6,650 shares. Apparently, the splitting of the stock was without objection of the stockholders. It is argued that the action thus taken makes it unnecessary to decide any further question concerning the issuance of the additional 6,650 shares. Since appellants have been permanently enjoined by the trial court's decree from issuing and selling said 6,650 additional shares, without giving to appellees and others similarly situated an opportunity to subscribe and pay for proportionate parts of such new issue, it can hardly be said that the question as to appellants' authority to take action as they propose has become moot. Clearly, the question as to the propriety of the permanent injunction was not rendered moot by the action taken in splitting the stock.

The decree is due to be reversed, except that part dealing with the 354 shares of stock, and the cause remanded. It is so ordered.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON, MERRILL and COLEMAN, JJ., concur.